ASBURY PARK AND SEA GIRT RAILWAY COMPANY et al.

*v.*

TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEPTUNE et al.

[Submitted August 16th, 1907. Decided September 19th, 1907.]

1. A traction company acquiring the road and franchises of another company at a mortgage foreclosure sale thereof is bound by the restrictions and conditions contained in an ordinance granting such other company a location for its tracks, though the company so purchasing did not expressly assume them.

2. A street railway company incorporated under *P. L. 1886 p. 185*, providing for the incorporation of street railway companies and their

regulation. and which on application, pursuant to *P. L. 1889 p. 100*, providing for a petition to a township by a company incorporated under such laws for a location of its tracks, has been granted permission to lay its tracks along a certain route through the township, derives its right to be a railway company and to occupy streets with its tracks from the legislature, and the only authority given to the township is to grant or refuse a "location" for the tracks, which, when once granted, exhausts its power, and the township cannot thereafter interfere with any rights conferred by the legislature.

3. Where a street railway company incorporated under *P. L. 1886 p. 185*, providing for the incorporation of street railway companies and the regulation of the same, made application to a township to lay its tracks along a certain route, pursuant to *P. L. 1889 p. 100*, and an ordinance was passed granting such location, subject to certain conditions, on acceptance of such ordinance by the company, it constituted a valid contract, and its provisions could not be impaired by either party without the consent of the other, and hence it was not competent for the township to revoke such ordinance without consent of the company and remove its tracks.

4. Where a street railway company incorporated under *P. L. 1886 p. 185*, providing for the incorporation of street railway companies and their regulation, on application pursuant to *P. L. 1889 p. 100*, has been granted permission to lay its tracks along a certain route on condition that it pay annually a certain per cent. of its gross receipts to the township, and under such provision has laid its tracks, the repeal of the ordinance granting such permission and consequent removal of the company's tracks, on the ground that it has failed to perform its agreement as to payment, may be enjoined on condition that the company account to the township for the compensation provided for.

5. A bill having been filed to enjoin a township from repealing an ordinance granting a street railway company a location for its tracks and their removal, a cross-bill was filed by the township, demanding that the company account as to compensation required by the ordinance granting such location to be made annually to the township.—*Held*, that the cross-bill was not subject to the objection that it sought a legal remedy only, since, though a cross-bill filed against a co-defendant must rest on considerations of equity, a more liberal rule applies as to a cross-bill filed against complainant.

6. A cross-bill in a suit to restrain the repeal of an ordinance granting a street railway company a location for its tracks and their removal, demanding an accounting as to compensation required by the ordinance to be made by the company for such location, is not subject to the objection that it introduces matters not within the scope of the original suit.

7. A cross-bill by a township to recover of a street railway company compensation required of it for a location for its tracks by the ordinance granting such location is barred as to compensation accruing more than six years before the date of the filing of the bill.

8. A street railway company was granted a location for its tracks through a township, the route being two and twenty-three hundredths

miles in length, on condition that it pay to the township annually five per cent. of its gross receipts. At that time the township claimed jurisdiction over the whole distance, but thereafter, when an accounting was sought as to such compensation, only forty-two hundredths of a mile of the railway lay within the township's boundaries. Before accounting the company, desiring to lay a double track through two boroughs, which at the time of the grant were embraced in such township, agreed to pay to each of them annually certain amounts, and at the time of accounting and previous thereto the two and twenty-three hundredths miles of track of such company had been operated in connection with another road, their total mileage being six and ninety hundredths miles, but the receipts of the two roads were not kept separate.—*Held*, on an accounting for such compensation, that the township should be compensated on the basis of the entire two and twenty-three hundredths miles, and that the amount on which the township's percentage should be calculated was that amount which bore the same proportion to the total receipts as two and twenty-three hundredths miles to six and ninety hundredths miles, or two hundred and twenty-three six hundred ninetieths of the total receipts, from which should be deducted payments theretofore made to the township and payments made to the boroughs.

On final hearing on bill, answer, replication and proofs.

*Mr. Frank Durand* and *Mr. Charles H. Ivins,* for the complainants.

*Mr. Samuel A. Patterson,* for the defendants.

HOWELL, V. C.

The Asbury Park and Belmar Street Railway Company was incorporated in December, 1892, under the provisions of a law entitled "An act to provide for the incorporation of street railway companies and to regulate the same," approved April 6th, 1886. *P. L. 1886 p. 185.* The incorporation was accomplished by the execution of a certificate of incorporation and the filing of the same in the office of the secretary of state. Among other things mentioned in this certificate are the duration of the company's existence, one hundred years, and the route over which it expected to lay its tracks and conduct its business. This certificate was filed in the office of the secretary of state on January 6th, 1893; on the following day the corporation applied to the township of Neptune for permission to lay its tracks and con-

struct its road along the route described in its certificate of incorporation. The application was made in pursuance of the provisions of a supplement to, the act above recited, which is found in *P. L. 1899 p. 100.* This supplement provided for a petition to the township committee by the directors of any company incorporated under the above-cited act (*P. L. 1886 p. 185*) for a location of the tracks of its railway conformably to the route designated in the articles of incorporation and for a public hearing and notice thereof, after which the committee should either reject the application or grant it under such lawful restrictions as they might deem the interests of the public required. The act then goes on to declare that the location thus granted shall be deemed and taken to be the true location of the tracks of the railway if an acceptance thereof in writing by the directors shall be filed with the secretary of state within thirty days after receiving notice thereof and a copy thereof delivered to the clerk of the municipality.

A copy of the ordinance which was passed by the township of Neptune, on the application of the street railway company, is in evidence. It is the foundation of the complainants' right. It locates the railway company's tracks on the route prescribed by the certificate of incorporation, subject to certain conditions and restrictions, among which is one providing for compensation to the township for the use of the streets, in the following words:

"4. That the location and franchise hereby granted shall be for the term of fifty years from and after the date of the adoption and passage of this resolution and ordinance; that in consideration of the grant of location and franchise herein made, and in consideration of the use for street railway purposes by said company of the portion of said street or public highway, subject to the control of said committee and as a compensation therefor, said company shall, on the second day in January, A. D. eighteen hundred and ninety-seven, and on the second Monday of January in each year thereafter, pay to the treasurer of said committee for the use of said township a sum of money equal in every instance to five per centum of the gross receipts from all the business of the said company for the year preceding each date of payment above specified."

The company agrees to submit its books to the township committee and furnish statements of its business at all reasonable

times. The permission is for the period of fifty years; at the end of that time there is a provision for the purchase of the tracks and other fixtures by the township.

The ordinance was accepted by the railway company in March, 1893, in the manner required by the statute and by the ordinance itself, and the company began the construction of the street railway over the line designated in the certificate of incorporation and the ordinance.

This route, as described, extends from Wesley lake bridge, at the head of Wesley lake, to the southerly line of Neptune township, a distance of two and twenty-three hundredths miles. That is the distance which the township of Neptune claimed the right to control.

The Asbury Park and Belmar Street Railway Company mortgaged its road and franchises to secure an indebtedness. This mortgage was foreclosed and at the sale under the decree the property and franchises were purchased by trustees for the mortgage creditors, who, on May 23d, 1898, transferred the same to the Asbury Park and Sea Girt Railroad Company which had been incorporated to take over the property, assets and franchises that had been so sold. In this way the Asbury Park and Sea Girt Railroad Company came into possession of the franchise granted by Neptune township and the company still claims to own and hold the right so originally granted. As a matter of law the company is bound by the restrictions and conditions contained in the said ordinance even though it did not expressly assume them. *Rutherford* v. *Hudson River Traction Co., 73 N. J. Law* (*44 Vr.*) *227.* It is one of the complainants in this suit.

On August 27th, 1898, the Asbury Park and Sea Girt Railroad Company made a lease of all its property and franchises to the Atlantic Coast Electric Railroad Company. This company got into financial difficulties and all its property rights and franchises, including its right in the said lease, were sold by E. S. Atwater, special master, appointed by the United States circuit court for the district of New Jersey, and on December 27th, 1905, were conveyed to the Atlantic Coast Electric Railway Company. This latter company is the other complainant in this suit.

The Atlantic Coast Electric Railway Company now owns or controls a continuous line of electric railway extending from Sea Girt on the south, to Pleasure Bay on the north, a distance of about sixteen miles, of which the line in question in this suit forms an integral and important part.

When the Atlantic Coast Electric Railroad Company became embarrassed in its finances, James Smith, Jr., was appointed receiver by the United States circuit court for the district of New Jersey. It would appear that all the franchise fees accruing to Neptune township, under the ordinance of 1893 up to January, 1897, had been paid and satisfied. When the 1897 payment matured counsel for the township applied to the court to compel its payment by the receiver. The court made an order on December 9th, 1897, directing the receiver to pay to the township the "sum of $400 in full settlement of said claim so due the said petitioner on the 1st day of January, 1897." From that time to the present the receiver and the Atlantic Coast Railway Company successively have annually, in January, paid to the treasurer of the township the sum of $400, for which the treasurer has given receipt. It does not appear that there was ever any agreement on the part of the township committee to accept $400 in full of the five per cent. annual payments. The minutes of the committee show no action whatever on the subject.

In the spring of 1907 the township committee passed a resolution calling on the complainants and the Asbury Park and Sea Girt Street Railway Company to appear before the township committee on March 25th, 1907, to show cause why the compensation provided for in the ordinance of 1893 should not be paid to the township, and why that ordinance should not be revoked and repealed for failure of the several companies to comply with its conditions and the company's tracks, plant and cars removed from the street. The complainants construed this into a clear threat on the part of the township committee to destroy a valuable and indispensable part of their line of railway, and at once filed their bill against the township of Neptune and the members of the township committee, praying that they might be enjoined from revoking or repealing the ordinance of 1893, and from

removing the railway tracks from the street in which they were laid.

The complainants allege in their bill that in some way unknown to them the original requirement that they should pay to the township five per cent. of their gross receipts annually, was commuted into an annual payment of $400, and that this amount had been fully paid; that hence there was nothing due to the township and it therefore had no right to take the impending action. The defendants answering jointly deny that there was ever any change in the amount of compensation or its method of computation, and claim by a cross-bill that the complainants must account to the township in respect of the compensation in the manner contemplated by the ordinance of 1893. On this branch of the case my judgment must be for the defendants. It is very clear, to my mind, that there has never been any change in or alteration or modification of the original ordinance of 1893, so far as the provision for compensation to the township is concerned. The statement in the complainants' pleadings that there had been such change was not supported by any proofs; this, together with the absence of any record of such an important act from the minutes of the township committee, would seem conclusive. Therefore, unless there are countervailing facts the complainants must at some time and in some court account to the township and pay whatever may be found due, in accordance with the provisions of the ordinance of 1893.

Before enlarging on this idea, it will be convenient to take up and discuss another branch of the case—that relating to the power of this court to enjoin municipal corporations in the exercise of the powers conferred upon them by the legislature.

The first case in New Jersey in which the question seems to have been mooted is *Bond* v. *City of Newark, 19 N. J. Eq. (4 C. E. Gr.) 376.* It was there held by Chancellor Zabriskie that the legislative acts or exercise of discretionary powers by municipal corporations, however unwise or impolitic, or even when done from corrupt motives or for unworthy purposes, are beyond the control of the courts, but when the corporation has fulfilled its legislative functions and has exercised its legislative discretion

the courts have the power and should interfere to control the acts of municipal corporations and their officers in the exercise of powers not legislative or discretionary.

Vice-Chancellor Dodd followed this ruling in *Schumm* v. *Seymour,* *24 N. J. Eq.* (*9 C. E. Gr.*) *143.*

In *Paterson and Passaic Horse Railroad Co.* v. *Mayor and Aldermen of the City of Paterson,* *24 N. J. Eq.* (*9 C. E. Gr.*) *158,* the city of Paterson and certain of the defendants threatened to tear up and remove the complainants' railway tracks in Colt street. The city of Paterson had given its consent to the railroad company to construct its railway in that street and it subsequently threatened to pass an ordinance repealing the ordinance which gave the permission, the company having in the meantime acted upon the permissive .ordinance and built its road. There was some suggestion that the consent had been obtained fraudulently but this charge of misrepresentation the·chancellor found to be baseless. He enjoined the city from revoking the ordinance and refused to dissolve the injunction on the ground that not only had the proper consents of the property owners been obtained but that relying thereon the street railway company had expended its money and built its railway, and that the defendants had, for a long time, acquiesced in the occupation of the street by the complainants with their railway.

Vice-Chancellor Van Fleet, in the case of *Cape May, &c., Railroad Co.* v. *City of Cape May,* *35 N. J. Eq.* (*8 Stew.*) *419,* applied the doctrine to a case very much like the present one. There the city of Cape May had authorized the complainants to construct a horse railroad through certain streets of the city and the complainants, under the authority thus given proceeded to construct the road. When it was nearly completed an ordinance was introduced into the common council, the purpose of which was to repeal portions of the prior ordinance and to revoke the authority given to the complainants to use these streets in the construction of their road. This ordinance had been read a second time and was about to be put on its third reading and submitted to a final vote. The complainants sought an injunction to restrain the council from passing it. The vice-chancellor denied the injunction, but on the ground that it was not

averred or shown that the city authorities intended, in the event
of the passage of the repealing ordinance, to order the tracks of
the complainants removed or to tear them up.  That is precisely
what is threatened in this case.  The complainants here were
ordered to show cause before the township committee why their
tracks should not be removed from the streets, and the case is
a direct authority, under the facts, for the interference of this
court with its injunctive powers.

The same principle was followed in *Hudson Telephone Co.* v.
*Jersey City, 49 N. J. Law (20 Vr.) 303.*  In that case the com-
mon council had designated the streets in which the telephone
company might place its poles.  After it had placed a large
number of poles at considerable expense the common council
passed an ordinance repealing the former permission.  The su-
preme court held that the repealing ordinance was void and in
the opinion cites two cases as authority for the proposition that
the common council of the city has no right to revoke its per-
mission given by statutory authority to the location of a railroad
in the streets.  The cases cited are *People's Passenger Railway
Co.* v. *Baldwin, 37 Leg. Int. 424; Brooklyn Central Railroad
Co.* v. *Brooklyn City Railroad Co., 32 Barb. 358.*

And see *Phillipsburg Electric Co.* v. *Phillipsburg, 66 N. J.
Law (37 Vr.) 505,* and cases cited.

I apprehend that the true ground is that the relation between
the street railway company and the township is one of contract
and that by virtue of the contract and the expenditure of money
in pursuance of its terms the street railway company has ob-
tained a vested right which is coterminous with the rights given
to it by the legislature and by the ordinance.  The court may,
in its discretion, in a proper case by its injunctive power, prevent
any attempt on the part of the municipal corporation to violate
the contract.  The doctrine is well illustrated by the case of
*Citizens' Street Railroad Co.* v. *City Railway Co., 56 Fed. Rep.
746; S. C. on appeal, 166 U. S. 557.*  And it was held in *Cleve-
land City Railway Co.* v. *Cleveland, 94 Fed. Rep. 385,* that the
federal circuit court would enjoin the passage of a city ordinance
which impairs the contract rights of a street railway company or
deprives it of its property without due process of law, and this,

upon the ground that city ordinances making grants of franchises to street railway companies on specified conditions when accepted by the companies, constitute contracts which cannot be annulled or amended except by consent of both parties and are protected from impairment by the federal constitution.

In *American Water Works Co.* v. *Home Water Co., 115 Fed. Rep. 178*, it was held that if the action of the city is based upon legislative authority to grant a franchise and to enter into contracts with the parties for the erection and use of public utilities, to grant the use of the public streets and charge for the use of its privileges, then the action of the city council is legislative, as one of the subordinate agencies of the state, and the deprivation of rights once granted without legal cause or without due process of law is within the constitutional prohibition, and upon such allegations a federal court has jurisdiction of the cause regardless of the citizenship of the parties. See *Jersey City* v. *Harrison, 71 N. J. Law (42 Vr.) 69.*

Again, the street railway company derives its right to be a railway company and to occupy the streets with its tracks from the legislature and not from the municipality. The only authority given to the township is to *grant* a "location" of the tracks over the route designated in the certificate of incorporation, or to refuse to make the grant. When once made, however, the municipality has exhausted its power and may not take further action. *Hudson Telephone Co.* v. *Jersey City, supra.* The street railway company is then in possession of the land covered by its tracks under legislative sanction and not by virtue of municipal authority except in so far as the municipal body had consented to the mere location of the tracks, and it will hardly be argued that the township committee can interfere with the legislative grant or with any rights that are conferred by legislative authority.

This argument leads to the conclusion that the ordinance of 1893 is a valid contract between the township and the street railway company, and that the binding force of its provisions cannot be impaired by either party without the consent of the other. In fact, the relation between them imposed upon them, respectively, reciprocal duties. It was not competent, therefore,

for the township to violate its part of the contract in the manner proposed nor could the street railway company abandon the performance of its duties as a public carrier of passengers. *Bridgeton* v. *Bridgeton and Millville Traction Co., 62 N. J. Law (33 Vr.) 592.*

The threat made by the township in its notice to the street railway is a threat that it intends to violate its contract.

The situation appeals with much force to a court of equity. To permit the repeal of the ordinance in question and the consequent removal of the tracks, would destroy a valuable property which the public have an interest in preserving as one of the public utilities of the state. And the violation of the complainants' rights should be enjoined if it can be so done as to work out an equitable result, and this, I think, is quite possible.

The township alleges that the complainant owes to it a large amount of money, being the compensation provided for in the ordinance of 1893; that the annual payments of $400 which the complainant and its predecessors have made are only partial payments, and that it cannot ascertain the correct amount because the complainant has not furnished the statements of its business as agreed, and it prays for an accounting by its cross-bill. This accounting I am inclined to advise, but I am met by the proposition advanced by the complainant that the cross-bill seeks a legal remedy only and it demurs to the cross-bill accordingly, on the ground that it lacks equity to support it. While it is true that a cross-bill filed against a co-defendant must rest on considerations of equity, a different and more liberal rule applies when the cross-bill is filed against the complainant. In such case the cross-bill is strictly a mode of defence, and as against the complainant the defendant may use all the weapons within his reach. *2 Dan. Ch. Pr. 1549; Mitford Eq. Pl. 81, 99; Ship. Eq. Pl. 406.* All the cases cited on this point in the complainants' brief are cases relating to original bills.

An answer is a shield, not a weapon. It replies to the complainants' equities. The cross-bill, while in aid of a defence, is also a mode of attack along lines which are necessary for a full defence and a complete adjudication of all the disputes that arise out of a transaction or series of transactions.

Again, it is argued on the part of the complainants that the cross-bill cannot be entertained for the reason that it introduces into the case matters which are not within the scope of the original suit.

The basis of the original suit is the ordinance of 1893. This confers a right on the complainants and gives compensation to the grantor as a consideration. The provision for compensation is in the nature of a covenant on the part of the street railway company that it will pay a money consideration for the grant. It resembles a case of interdependent covenants. Both the complainants' and defendants' causes of action arise out of the same instrument and are referable to what I have spoken of as interdependent covenants. I see no reason why the whole subject-matter should not be dealt with in one suit. *Beck* v. *Beck, 43 N. J. Eq.* (*16 Stew.*) *39; Harrison* v. *Harrison, 46 N. J. Eq.* (*1 Dick.*) *75.*

The complainants should be awarded an injunction to prevent the township from interfering with or imperilling their rights under the ordinance of 1893, but upon condition that they account to the township in respect of the compensation provided for therein.

It only remains to determine the principles on which the account will be taken.

In the first place, it cannot extend beyond six years from the date of the filing of the bill. This is in consonance with the rule which would be applied if the township had pursued its common-law remedy. *Executor of Wanamaker* v. *Van Buskirk, 1 N. J. Eq.* (*Sax.*) *691; Cowart* v. *Perrine, 18 N. J. Eq.* (*3 C. E. Gr.*) *454; Arnett* v. *Finney, 41 N. J. Eq.* (*14 Stew.*) *147.*

In *Metropolitan Railroad Co.* v. *District of Columbia, 132 U. S. 1,* it was held that the District of Columbia was a municipal corporation and that an action by it to recover from a street railroad company the cost of maintaining pavements in a street, which the company is by its charter bound to maintain, was not an action upon the statute but one in *assumpsit,* and the statute of limitations applied to it.

And in *Commissioners* v. *Buckner, 48 Fed. Rep. 533,* it was held that the rule that statutes of limitation do not run against

the state does not apply in favor of a city in virtue of the governmental power exercised by it in respect to a claim of the city against the United States for taxes alleged to have been illegally collected. *Wood Lim.* § 53.

At the hearing it was urged on the part of the complainants that the Asbury Park and Sea Girt Street Railway Company was bound to pay the compensation provided for in the ordinance of 1893, on the basis of the mileage of the road lying within the limits of Neptune township only. The total length of the route described in the ordinance is two and twenty-three hundredths miles and at the time of the passage of the ordinance Neptune township claimed jurisdiction over the whole of this distance. At the present time, however, only forty-two hundredths of a mile of the railway lies within the boundaries of that township.

At the time of the passage of the ordinance of 1893, the arrangement of the municipalities in question was this: Neptune township was in existence. It embraced the two boroughs of Neptune City and Avon, both of which were also in existence; the remaining borough of Bradley Beach having not yet been formed.

Later, when the complainants wished to lay double tracks through Neptune City and Avon, they agreed to pay a compensation to each of these boroughs as follows: To Neptune City, $275 annually, and to Avon, $350 annually. These payments are, therefore, for territory which was embraced in the original ordinance of 1893 and for which the railway company engaged to pay the township of Neptune. It was therefore claimed that the payment should be apportioned between Neptune township and the other municipalities, or that the amounts paid and payable by the street railway company to these other municipalities should be deducted from any amounts which might be payable for the whole two and twenty-three hundredths miles.

The ordinance on this point is explicit and clear. The company, by its acceptance thereof, agreed to "pay to the treasurer of said committee for the use of said township a sum equal in every instance to five per centum of the gross receipts from all the business of said company for the year preceding each date of payment."

Here is a contract which needs neither construction nor interpretation. The company has agreed to pay a percentage of its gross receipts *from all its business,* and although it may be that the company has made a hard bargain, yet the court can hardly be asked to make a new one for the parties.

I therefore think that the computation must be made upon the basis of the total receipts of the company from its railway business in the first instance, but subject to such deductions as are hereinafter mentioned.

The length of the road from Asbury Park to Sea Girt is six and ninety hundredths miles. The Asbury Park and Sea Girt Street Railway Company owns two and twenty-three hundredths miles and the Sea Coast Traction Company four and sixty-seven hundredths miles of this distance. The railway over this whole distance is operated as a single line. There has been no separation of the receipts of the Sea Girt Traction Company from those of the Asbury Park and Sea Girt Street Railway Company. In ascertaining the amount on which the defendants' compensation should be calculated the total receipts of the line from Asbury Park to Belmar should be apportioned on a mileage basis between the two distances above mentioned for the various years over which the accounting shall extend, apportioning to the Asbury Park and Sea Girt Street Railway Company two hundred and twenty-three six hundred ninetieths of the receipts for the several years. This will give the total receipts of the company on which the percentage will be calculated.

When the amount payable under the ordinance shall have been ascertained by this method of calculation it will be reduced by certain items which I now mention. The first will be the payment of $400, which has been annually made by the railway companies to the treasurer of the township of Neptune. There should likewise be deducted the annual payments which have been made by the railway companies to the boroughs of Avon and Neptune City. This is conceded by counsel for the defendants in their brief, on the ground that it is justice and equity—a recognition of the rule that as parties to a suit in equity they are required to conform to equitable principles.

I will advise a decree in accordance with these conclusions.