ASBURY PARK AND SEA GIRT RAILROAD COMPANY et al.

*v.*

THE TOWNSHIP OF NEPTUNE, IN THE COUNTY OF MON-
MOUTH, et al.

[Submitted March 23d, 1909.   Decided June 14th, 1909.]

1. When a trolley road has laid its tracks through the streets of a township, in pursuance of an ordinance fixing location of its tracks, equity has jurisdiction to enjoin the removal of such tracks by the township.

2. When the grant was made upon a condition that the trolley company should pay annually to the township a certain per cent. of the gross receipts of its business, a court of equity has jurisdiction to compel the road to account for such percentage, upon a cross-bill filed by the township in a suit to enjoin it from removing the tracks of the trolley road, threatened because the compensation had not been paid.

3. Where a trolley road agreed to pay to a township annually five per cent. of the gross receipts of the business of the road, it is not relieved from a portion of such payment because the distance it runs in the township has been shortened by the fact that other municipalities have been carved out of the township territory through which the trolley ran ; nor can the sum be reduced by the fact that other sums have been exacted by these new municipalities for a right to lay an additional track through them.

4. This trolley road having formed a connection with another road, after which a single fare was charged for a passage over the entire system, the receipts from the business of the former road are to be regarded as such proportion of the entire receipts as the length of the former road bears to the length of the entire system of roads.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 323.*

Mr. *Frank Durand* and Mr. *Charles H. Ivins,* for the complainants.

Mr. *Samuel A. Patterson,* for the defendants.

The opinion of the court was delivered by

REED, J.

These are cross-appeals from the same decree. The main purpose of the bill is to restrain the township of Neptune from attempting to remove the tracks of the Asbury Park and Sea Girt Railroad Company from the main street in the town of Neptune, county of Monmouth.

Both complainants are trolley companies, incorporated under the act of 1886. The road of the Asbury Park and Sea Girt Railroad Company extends from Asbury Park to Belmar, in the county of Monmouth.

The Atlantic Coast Electric Company operates a road from Pleasure Bay to the state encampment at Sea Girt, and operates the Asbury Park and Sea Girt railroad as a part of this system.

The right of the complainants in the tracks, the removal of which is threatened, is exhibited in detail in the opinion of the vice-chancellor. It is only necessary now to restate the skeleton of facts.

The tracks questioned were built by another trolley company, namely, the Asbury Park and Belmar Street Railway Company. That road had petitioned the township committee of Neptune township for a location of the tracks of its railway in said township. An ordinance was passed by the township committee on February 11th, 1893, granting the right of the company to locate its tracks over the main street leading from Asbury Park to Belmar. This ordinance was accepted by the company and the road built. The grant was for fifty years, but subject to conditions, one of which was that, as compensation for the grant, the railway company should pay each January to the treasurer of the township committee of Neptune township a sum of money equal to five per cent. of the gross receipts from all the business of the said company for the year preceding payment. This road, the Asbury Park and Belmar Street Railway Company, was sold by a receiver to certain trustees, who again sold it to the Asbury Park and Sea Girt Railroad Company, which company leased it to the Atlantic Coast Electric Railroad Company, which lease

was afterward sold and bought in by the same Atlantic Coast Electric Railroad Company, who now operates it.

It is sufficient to say that the burden and the rights under the ordinance passed by the Neptune township committee now resides in and rests upon the complaining roads.

In March, 1907, the township committee of Neptune township served a notice upon the complainants that they should show cause why the compensation fixed by the ordinance granting to the Asbury Park and Belmar railroad the right to lay its tracks in the main street should not be paid to the township, and to show cause, if default was made in the payment of said compensation, why said ordinance should not be revoked and all the tracks, plant and cars of the said railway company should not be removed forthwith from the said route lying within the township of Neptune.

The bill in this case was filed to enjoin the threatened action of the township committee, and in it the complainants set up that the payment of the five per cent. of the annual gross receipts of the company had been commuted into the payment of $400 annually, which amount had been paid by the railroad company to the township treasurer.

This commutation of payment is denied in the answer of the township of Neptune, and the township of Neptune, by way of cross-bill, seeks an accounting from the railroad company of the gross receipts of the railroad company, which the township claims it is entitled to receive according to the terms of the ordinance.

The vice-chancellor found that there had been no commutation by which the percentage of gross receipts was fixed at $400 annually, and in this conclusion we concur.

The vice-chancellor also found that, upon the facts stated in the bill and answer, the court of chancery had the power to enjoin the threatened act to remove the tracks of the complainants and also jurisdiction to direct an accounting by the railroad company of the amount of its business and gross receipts. In this we concur.

The court of chancery then, by its decree, refers the computation of the gross receipts, five per cent. of which is to be paid to

the township of Neptune, to a special master, and fixed the conditions upon which the computation should be made.

To understand the basis of this direction it is essential that certain facts, appearing in the pleadings and stated in the opinion of the vice-chancellor, should be restated.

When the ordinance of February 11th, 1893, was passed, the terminal points of the proposed Asbury Park and Belmar Railroad Company were Asbury Park and Belmar. It was on the gross receipts of that road, five per cent. of which was to be paid to the township of Neptune. The length of this road was two and twenty-three hundredths miles. Now, only forty-two hundredths of a mile lies within the boundaries of the township of Neptune. In the language of the vice-chancellor: "At the time of the passage of the ordinance of 1893 the arrangement of the municipalities in question was this: Neptune township was in existence; it embraced the two boroughs of Neptune City and Avon, both of which were also in existence, the remaining borough of Bradley Beach having not yet been formed. Later, when the complainants wished to lay double tracks through Neptune City and Avon, they agreed to pay a compensation to each of these boroughs as follows: To Neptune City, $275 annually, and to Avon, $350 annually. These payments are, therefore, for territory which was embraced in the original ordinance of 1893, and for which the railway company engaged to pay the township of Neptune. It was, therefore, claimed that the payment should be apportioned between Neptune township and the other municipalities, or that the amounts paid and payable by the street railway company to these other municipalities should be deducted from any amounts which might be payable for the whole two and twenty-three hundredths miles."

The vice-chancellor found that the company had agreed to pay a percentage of its gross receipts from all its business, and that the company must stand by its contract; that the computation must be made on the basis of the total receipts of the company from its railway business. In this view we concur.

The method of fixing the amount of the gross receipts of the Asbury Park and Belmar Street Railway Company was as follows: "The length of the road from Asbury Park to Sea Girt

is six and ninety hundredths miles.   The Asbury Park and Sea Girt Street Railway Company owns two and twenty-three hundredths miles, and the Sea Coast Traction Company four and sixty-seven hundredths miles of this distance.   The railway over this whole distance is operated as a single line.   There has been no separation of the receipts of the Sea Girt Traction Company from those of the Asbury Park and Sea Girt Street Railway Company.   In ascertaining the amount on which the defendant's compensation should be calculated the total receipts of the line from Asbury Park to Belmar should be apportioned on a mileage basis between the two distances above mentioned for the various years over which the accounting shall extend, apportioning to the Asbury Park and Sea Girt Street Railway Company two hundred and twenty-three six hundred ninetieths of the receipts for the several years.   This will give the total receipts of the company on which the percentage will be calculated."   .

In this view we concur.

Following this, the conclusion of the vice-chancellor embodied in the decree a clause that there should be deducted from the percentage of the gross receipts the amount which had been annually paid by the railroad company to the boroughs of Avon and Neptune City.

These deductions, we think, should not be made.   The contract, as already stated, was to pay five per cent. of the gross receipts of the business of the company.   The gross receipts are the amounts received without any deductions.   If the payment of the sums mentioned to Avon and Neptune City was essential to the operation of the road, nevertheless the deduction of these sums, as well as any other sums necessarily incurred in the running of the road, was a deduction from the percentage of the gross receipts, which, by its contract, the railroad company had bound itself to pay.

The vice-chancellor remarks in his opinion that the right to deduct these was conceded, and no such concession is made in this court in the briefs of counsel.

The result is, that on the appeal of the railroad company the decree below is affirmed.   On the appeal of the township of Neptune the decree is reversed for modification in respect to the direc-

tion that the sums annually paid to Avon and Neptune City shall be deducted from the five per cent. of the gross receipts payable to the township of Neptune.

It is to be observed that the decree enjoins not only any interference with or removal of complainants' tracks by the township committee, but also enjoins the revocation of the ordinance of 1893. The last clause of the injunction suggests a question whether a court of equity will ever restrain legislative action by a municipality, or if ever, when. The question is discussed and the cases collected in *McQuil. Mun. Ord.* § *163.* This question was not discussed in the briefs of counsel, and was not distinctly raised by the defendant's petition of appeal. This was, obviously, because, if the injunction went at all restraining any interference with the tracks, it did not matter whether or not the injunction restrained the revocation of the ordinance of 1893. We, therefore, express no opinion upon this question.

On appeal of the railroad company:

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—16.

*For reversal*—None.

On appeal of the township of Neptune:

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—16.