THE CITY OF CHICAGO, Appellant, *vs.* THE CHICAGO AND
OAK PARK ELEVATED RAILROAD COMPANY, Appellee.

*Opinion filed June 20, 1911.*

1. MUNICIPAL CORPORATIONS—*what is not a track elevation ordinance.* An ordinance prohibiting a corporation from running cars on any track on the surface of a street across an intersecting street where the track parallels an elevated railroad and any rail of the track is within fifteen feet of the end of any abutment wall of a bridge which carries the elevated tracks across such intersecting street, is not a track elevation ordinance.

2. SAME—*ordinance which has become void for non-acceptance has no force for any purpose.* Where an ordinance requiring a street railway company to elevate its tracks provides that it shall be null and void if not accepted by the company within a specified time, a failure of the company to accept the ordinance within that time renders the ordinance void, and it has no more force for any purpose than though it had never been passed.

3. SAME—*grant of use of streets is not mere license.* A grant, by ordinance, of the use of a street by a street railway company, when based upon adequate consideration and accepted and acted upon by the company by building the road in compliance with the ordinance, is not a mere license revocable at the pleasure of the municipal corporation, but is a contract binding not only upon the municipal corporation which passed the ordinance, but also upon the one which subsequently annexes the territory.

4. SAME—*city cannot, under guise of regulation, deprive street railway company of its property.* A city has the right, in the exercise of its police power, to regulate the use of a street railway company's tracks and cars in a reasonable manner, but it cannot, under the guise of regulation, deprive the company of its property or of any of its essential rights acquired under its contract whereby the tracks were laid.

5. SAME—*power to regulate lawful business does not authorize its prohibition.* The right of a city, in the exercise of its police power, to regulate any business or the use of property does not amount to power to prohibit the conducting of a lawful business or to suppress entirely the use of the property.

6. SAME—*city cannot, by mere declaration, establish that the operation of a railroad is a nuisance.* The public welfare demands that there should not be a discontinuance of the operation of an authorized railroad, and where a railroad is authorized by ordinance and constructed in accordance therewith, the city cannot, by

a mere declaration, establish that the operation of the railroad is a nuisance.

7. SAME—*fact that crossings are dangerous does not authorize deprivation of use of street.* The fact that the crossings of a duly authorized street railway company have become dangerous by reason of the elevation of the tracks of a parallel steam railroad does not empower the city, under the guise of regulation, to deprive the company of its right to use the street under the ordinance authorizing the construction and operation of the road.

8. SAME—*when ordinance concerning operation of street cars is invalid.* Where a street railway company, under authority of an ordinance, has constructed a double-track surface railway over the portion of a street specified in the ordinance, a subsequent ordinance prohibiting the running of surface cars across any intersecting street where the track parallels an elevated railroad and is within fifteen feet of the abutment of any bridge carrying the elevated tracks across such intersecting street is invalid as to such company if its effect is to deprive the company of the entire use of one of its tracks and compel it to operate a single-track railway.

APPEAL from the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, (CHARLES M. HAFT, of counsel,) for appellant:

While a corporation derives its right to exist from the State, its right to occupy the public highways of a municipality is derived solely from such municipality. *Byrne* v. *Railway Co.* 169 Ill. 75.

The city of Chicago is clothed with general police power over the streets within its confines. *Railway Co.* v. *Lake View,* 105 Ill. 183 and 207.

The city of Chicago has general power to prescribe what are nuisances and to abate the same. *Railway Co.* v. *Lake View,* 105 Ill. 207.

A municipality cannot, by the terms and conditions of an ordinance, deprive itself of the power to make regulations and restrictions for the preservation of the health, safety, comfort and convenience of the people, and it is immaterial what form such attempt may assume,—it is·

nugatory in all instances. *Chicago* v. *Traction Co.* 199 Ill. 259; *Railroad Co.* v. *Duluth,* 208 U. S. 581; *Railroad Co.* v. *Defiance,* 167 id. 97.

When an ordinance is passed it is presumably valid, and before a court will be justified in holding it invalid, the unreasonableness or want of necessity for such a measure for the public safety and for the protection of life and property should be clearly made to appear. *Hawthorn* v. *People,* 109 Ill. 302; *People* v. *Railway Co.* 232 id. 292; *Railway Co.* v. *Steckman,* 224 id. 500.

The inhibitions of the constitution of the United States upon the impairment of the obligation of contracts without due process or of the equal protection of the laws of the United States are not violated by the legitimate exercise of the legislative power in securing the safety, health, comfort or convenience of the public. *Railway Co.* v. *Bristol,* 151 U. S. 556.

A right of way ordinance, such as that granted by the town of Cicero to construct and maintain the tracks in question, does not operate to deprive the city of the general power of control over the streets, delegated to the municipality by the General Assembly. *Chicago* v. *Traction Co.* 199 Ill. 259; *Railroad Co.* v. *Quincy,* 136 id. 563.

The police power comprehends the public safety, health, comfort and convenience. *Chicago* v. *Traction Co.* 199 Ill. 259; *Railway Co.* v. *Chicago,* 140 id. 309; *Railway Co.* v. *Drainage Comrs.* 200 U. S. 561; *Railway Co.* v. *Bristol,* 151 id. 556.

The various States did not, by the adoption of the Federal constitution, surrender their police power, and that power extends to the entire property and business within the State. It rests upon the fundamental principle that everyone shall so use his own as not to wrong or injure another. To regulate and abate nuisances is one of its ordinary functions. *Fertilizing Co.* v. *Hyde Park,* 97 U. S.

659; *Mugler* v. *Kansas*, 123 id. 623; *Munn* v. *Illinois*, 94 id. 113.

Although a structure placed over, under, along or across a highway does not, at the time of its construction, necessarily obstruct or interfere with the use of such highway, nevertheless, if by reason of a change of circumstances such structure becomes an obstruction, the governmental power may, without compensating its owner, require such owner to remove it. *Railway Co.* v. *Chicago*, 201 U. S. 506; *Railway Co.* v. *Drainage Comrs.* 200 id. 561.

A municipality, in the exercise of its police power, has plenary authority to require a street railway company to change the location of its tracks laid in the streets of the municipality. *Railroad Co.* v. *Defiance*, 167 U. S. 88; *Railroad Co.* v. *Baltimore*, 166 id. 673.

CLARENCE A. KNIGHT, WILLIAM G. ADAMS, and EDWIN WHITE MOORE, for appellee:

The city of Chicago, in the exercise of its police power, while it may regulate the use by appellee of its tracks and cars in a reasonable manner, cannot, under the pretense of regulation, deprive appellee of any of its property or of its essential rights and privileges. The ordinance in question wholly destroys appellee's use of one of its tracks. It is not in any sense a regulation of the use of this track. It is therefore a violation of rights guaranteed to appellee by the constitution of the United States and by the constitution of Illinois. *Railroad Co.* v. *Railroad Comrs.* 19 Fed. Rep. 679; *Turf Ass'n* v. *Greenberg*, 204 U. S. 363; *Chicago* v. *Jackson*, 196 Ill. 504; *Champer* v. *Greencastle*, 138 Ind. 350; *Minnesota* v. *Barber*, 136 U. S. 319; *Railroad Co.* v. *Bowers*, 4 Houst. 537; Parker & Worthington on Public Welfare and Safety, sec. 367; *Railroad Co.* v. *Cordele*, 128 Ga. 293; *Seattle* v. *Railroad Co.* 6 Wash. 379; *Telephone Co.* v. *Pomona*, 172 Fed. Rep. 829.

The right granted to appellee by the town of Cicero to use the streets is property. *Bailey* v. *People,* 190 Ill. 33; *Coal Co.* v. *People,* 147 id. 66; *Bridge Co.* v. *Bridge Co.* 7 N. H. 35; *Ritchie* v. *People,* 155 Ill. 105; *Railway Co.* v. *Railway Co.* 87 id. 324; *Railway Co.* v. *Railway Co.* 115 id. 385; *Dixon* v. *People,* 168 id. 190; *Gillespie* v. *People,* 188 id. 183.

The grant by a municipality of the right to use a street, when accepted, constitutes a contract between the municipality and the grantee, which is binding and obligatory upon both parties. *Gas Light Co.* v. *Lake,* 130 Ill. 54; *Railway Co.* v. *People,* 73 id. 541; *Quincy* v. *Bull,* 106 id. 337; *Belleville* v. *Railway Co.* 152 id. 185; *People* v. *Railroad Co.* 235 id. 379; *Railroad Co.* v. *Chester,* 121 Pa. St. 44; *People* v. *Blocki,* 203 Ill. 372.

The ordinance in question, if complied with, would not in any degree contribute to the safety of the public at the crossings, while its enforcement would cause great detriment and pecuniary loss to appellee. It is therefore unreasonable. In order to sustain an act of police power it must appear to the court that it would tend to promote the welfare of the public. It does not appear from the evidence that the tracks in question, at a distance of fifteen feet from the abutments, would make the crossings any safer than at the present distance of nine feet. 22 Am. & Eng. Eney. of Law, 938; *Lawton* v. *Steele,* 152 U. S. 136; *Railroad Co.* v. *McClelland,* 25 Ill. 129; *Hennington* v. *Georgia,* 163 U. S. 299; *Railroad Co.* v. *Connersville,* 147 Ind. 277; *Chicago* v. *Railway Co.* 244 Ill. 227; *Lake View* v. *Tate,* 130 id. 252; *Wice* v. *Railroad Co.* 193 id. 351; *Railway Co.* v. *Carlinville,* 200 id. 314; *Railroad Co.* v. *Dallas,* 70 L. R. A. 850; *Hannibal* v. *Telephone Co.* 31 Mo. App. 33; *Ex parte Kelso,* 82 Pac. Rep. 241.

A street railroad duly authorized by the city to use the street cannot lawfully be declared to be a nuisance and abated as such. *Railroad Co.* v. *Joliet,* 79 Ill. 44; *Railroad*

*Co.* v. *Loeb,* 118 id. 211; *Chicago* v. *Stock Yards Co.* 164
id. 232; *Miller* v. *Mayor,* 109 U. S. 394; *Railway Co.* v.
*Peuser,* 190 Ill. 70; Wood on Nuisances, (3d ed.) 94.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a suit brought by the city of Chicago, appellant,
against the Chicago and Oak Park Elevated Railroad Com-
pany, appellee, in the municipal court of Chicago, to re-
cover penalties for 304 alleged violations of an ordinance
of the city of Chicago.

Appellee in 1890 was authorized by an ordinance of the
city of Chicago to construct an elevated railroad in Lake
street, in that city, from Wabash avenue to Fifty-second
avenue, which was then the western limit of the city.   At
that time the corporate name of the appellee was "The
Lake Street Elevated Railroad Company."   The road so
authorized was shortly thereafter constructed by appellee.
December 19, 1898, the town of Cicero passed an ordinance
by which it authorized the Cicero and Harlem Railroad
Company to construct a railroad from Fifty-second avenue
(which should connect with the road of appellee at that
point) to Harlem avenue, in Oak Park.   That ordinance
provided that the road should descend by gradient from
Fifty-second avenue to Willow avenue and thence from
Willow avenue to Harlem avenue as a surface railroad,
with tracks supported on ties, and further provided: "Said
tracks shall be laid west of Willow avenue on Lake street
and South boulevard with such rails and in such manner
that carriages and other vehicles can easily and freely cross
the same at street intersections without obstruction, and
shall at all street crossings restore the grade and pavement
to as good a condition as the same were before the laying
of said tracks."   This road was constructed in conformity
with the provisions of the ordinance and was then pur-
chased by the Lake Street Elevated Railroad Company.   To
secure the funds necessary to purchase this road the Lake

Street Elevated Railroad Company issued its bonds to the amount of $1,275,000. Since 1901 this road has been operated as part of the continuous line of the road, extending on Lake street from Wabash avenue to Harlem avenue, in Oak Park, a distance of nine miles. In 1903 the territory west from Fifty-second avenue to Austin avenue on the line of this railroad,—a distance of one mile,—was annexed to the city of Chicago and Austin avenue became the western city limit. Between Fifty-second avenue and Austin avenue the road intersects eight north and south streets. From Fifty-second avenue west the road of appellee is paralleled by the road of the Chicago and Northwestern Railway Company, a steam railway, the right of way of the railway company extending along the north line of Lake street and South boulevard. By the said ordinance of the town of Cicero it was provided that the tracks of the Cicero and Harlem Railroad Company should be placed on the north thirty-two feet of the street for a part of the distance and on the north twenty-eight feet of the street for the remainder of the route, and permitted the building of a double-track railway. In 1906 the city council of the city of Chicago passed an ordinance requiring the appellee and the Chicago and Northwestern Railway Company to elevate their road-beds and tracks as far west as Austin avenue. This ordinance required the acceptance of each company within ninety days after its passage before it should become effective as to such company, and provided by its terms that in case it was not so accepted the ordinance should be considered null and void as to the company not accepting. The Chicago and Northwestern Railway Company accepted this ordinance, but appellee declined to do so. The steam railway company thereupon proceeded to elevate its road-bed and tracks as far west as Austin avenue, which work was completed in 1909. The road-bed was enclosed on both sides by a concrete retaining wall twenty feet high, built on the boundary lines of the right of way. The road-bed is car-

ried over the intersecting streets by bridges, supported by abutments built along the east and west boundaries of the streets. The north rail of the appellee's north track, from Willow avenue to Austin avenue, runs parallel with and is about nine feet south of the south retaining wall of the Chicago and Northwestern Railway Company. Another ordinance was passed by the city of Chicago requiring appellee to elevate the plane of its tracks between Fifty-second avenue and Austin avenue. This ordinance also provided that it should become effective from and after its passage, and provided that it should be null and void unless appellee accepted its terms within sixty days after its passage. The appellee declined to accept this ordinance. Thereafter, on November 22, 1909, the ordinance here involved was passed. The first section of the ordinance is as follows:

"Paragraph 1. That no person or corporation shall propel, or cause to be propelled, any single car or train of cars on any track or tracks situated on the surface of any street in the city of Chicago, across an intersecting street, when the track or tracks on which such single car or train of cars is or are propelled run parallel to the tracks of any steam railroad the tracks of which are elevated on an embankment and are carried over intersecting streets by a bridge or bridges, where the condition is such that any rail of said surface track is within fifteen (15) feet of the end of any abutment wall supporting said bridge or bridges.

"Paragraph 2. It is hereby declared to be a nuisance for any person or corporation to operate a single car or train of cars in violation of the foregoing paragraph."

The second section provides for a fine of not less than $5 nor more than $25 for each violation of the ordinance, and provides further that every single car or train of cars operated in violation of the ordinance shall be deemed a separate offense. It was admitted that if the ordinance was held valid there had been 304 violations of the same and that judgment should be entered accordingly. On a

hearing the municipal court of Chicago entered judgment for the defendant, and the case is brought to this court upon a certificate of the trial judge that it is a case where the validity of a municipal ordinance is involved, and that in his opinion public interest requires that an appeal be allowed directly to this court.

The contention of appellee in the court below, and its contention here, is, that as to it this ordinance is invalid because it impairs the obligation of the contract between it and the town of Cicero; that it deprives it of property without compensation, and is not a valid exercise of the police power of the city. Appellant contends, on the other hand, that the ordinance on which the suit is founded in effect requires track elevation; that it is neither unreasonable nor unconstitutional, and is one which the city had authority to pass.

This ordinance is in no sense one requiring track elevation. It does not pretend to permit the separation of the grade of the railroad tracks from the grade of the street, either by elevating or depressing the road-bed and tracks of the railroad. It provides simply for the removal of the tracks of any railroad company which are lying parallel with the tracks of any elevated steam road and within fifteen feet of the end of any abutment wall supporting the bridge or bridges which carry the elevated tracks over any intersecting street. So far as the terms of this ordinance alone are concerned, track elevation on the part of appellee is not contemplated or permitted.

Appellant urges that appellee can avoid the destruction of its north track under this ordinance by complying with one of the ordinances heretofore passed requiring appellee to elevate its tracks between Fifty-second and Austin avenues, and refers to those ordinances as though the same were still in force and effect. Each of those ordinances by express terms provided that it would become operative only upon the acceptance of its terms by appellee within a speci-

fied time, and in case appellee should fail to so accept it, that it would become null and void. As appellee declined in each instance to accept the terms of these ordinances they never became effective, and appellee is in the same position toward the city of Chicago as though no such elevation ordinances had ever been passed.

Under the ordinance passed by the town of Cicero, the Cicero and Harlem Railroad Company was granted the right to construct a railroad, consisting of two tracks, from Fifty-second avenue to Harlem avenue over a specified portion of the streets indicated. This ordinance provided that that company should operate a surface railroad under the grant, and specified the manner in which its tracks should cross the intersecting streets and the condition in which such crossings, including the grade of the street and the pavement, should be left after the building of the road had been completed. The road was built under this ordinance and was afterwards sold to the appellee for a large sum of money and has been operated as a double-track surface railroad since the time of its completion. The evidence shows that appellee runs 296 trains daily to Austin avenue and that these trains carry 50,000 passengers. There was no dispute as to any fact. The evidence further discloses that the removal of the north track to a distance of fifteen feet from the abutment of the bridges over the eight intersecting streets between Fifty-second and Austin avenues, which abutments are on the north line of appellee's right of way of thirty-two feet, would leave but seventeen feet for appellee's use, and that two tracks could not be used in that space. To comply with this ordinance appellee would be limited to one track for the operation of its road between Fifty-second and Austin avenues, which it is not denied would seriously impair the operation of the road and its revenue.

The contention of appellant is, that the conditions existing at the eight street crossings between Fifty-second and

Austin avenues are so dangerous that the passage and enforcement of this ordinance is a proper exercise of its police power to insure the safety of the public. It is shown by the evidence that at each of the street crossings in question appellee has voluntarily installed and maintains gates, at which signal bells are rung automatically on approach of trains and lights put on, which continue to burn while the bells are ringing. A flag is also displayed at the time, which indicates whether the gate is up or down. These gates are located between the abutments and the north track of appellee and are about three feet from the retaining wall and abutments. The arms of the gates, when lowered, extend across the full width of the street and the sidewalk. During four hours of each day, which are referred to as rush hours, (two hours in the morning and two hours in the evening,) trains are run over this territory every three minutes and at times at the rate of one every minute and a half. During the time that these conditions have existed at the eight street crossings in question, since the elevation of the tracks of the Chicago and Northwestern Railway Company, but two accidents are shown to have occurred at any of these crossings,—one to a policeman on duty at one of the crossings and one in which a milk-wagon was struck. The mere fact that these crossings may be dangerous is not sufficient to authorize the city to deprive appellee of its right to use South boulevard and Lake street under its contract originally made with the town of Cicero. That ordinance granted to the assignor of appellee permission and authority to lay its tracks on the north thirty-two feet of South boulevard and Lake street and to use them for the purposes for which they are being used. The privilege of the use of the public streets of the city or town, when granted by ordinance, is not always a mere license, revocable at the pleasure of the municipality granting it, for if the grant is for an adequate consideration and is accepted by the grantee, then the ordinance ceases to be a

mere license and becomes a valid and binding contract; and the same result is reached where, in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner, so that to revoke it would be inequitable and unjust. (*Chicago Municipal Gas Light Co.* v. *Town of Lake,* 130 Ill. 42; *City of Belleville* v. *Citizens' Horse Railway Co.* 152 id. 171; *People* v. *Blocki,* 203 id. 363.) This ordinance is, in effect, an attempt to revoke the license of appellee to use the street under the terms of the ordinance giving it that permission. The grant by the town of Cicero, and by which the city of Chicago is bound, was accepted and acted upon in a substantial manner by appellee and its assignor and now constitutes a contract binding and obligatory upon appellant and appellee, which cannot be arbitrarily broken. The city of Chicago undoubtedly has the right, in the exercise of its police power, to regulate the use by appellee of its tracks and cars in a reasonable manner, but it cannot, under the pretense of regulation, deprive the appellee of its property or of any of its essential rights and privileges acquired under the contract with the town of Cicero. *City of Chicago* v. *Jackson,* 196 Ill. 496; *City of Belleville* v. *Turnpike Co.* 234 id. 428; *Venner* v. *Chicago City Railway Co.* 246 id. 170.

It cannot be contended that by this ordinance appellant is attempting in any manner to regulate the use by appellee of its tracks and cars, and, indeed, counsel for appellant frankly admit that such is not the purpose of the ordinance and insist that the ordinance is one requiring elevation. As has been pointed out, this ordinance cannot be regarded in any sense as an elevation ordinance, and as its only purpose is to require the removal of the tracks of such railroad companies as are situated as is appellee, it is such an infringement upon the rights of appellee as renders the ordinance invalid as to it. The right of the city, by the exercise of its police power, to regulate any business or the use of any property does not give the power to prohibit the con-

250 — 32

ducting of a lawful business or to suppress entirely the use of property. *Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191; *City of Chicago* v. *Gunning System,* 214 id. 628.

It is contended by appellant that it has the power to declare such a situation as is here presented to be a nuisance and to suppress the same. Appellee is conducting its business in accordance with the grant made originally by the town of Cicero. It constructed its road by authority of law, and is operating it, under the terms of the grant, for the accommodation of the public. The city cannot, by a mere declaration, show the operation of the appellee's road through the territory in question to be a nuisance and subject its tracks to removal. The public welfare demands that there should not be a discontinuance of the operation of an authorized railroad. *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 id. 203.

Appellant complains of the refusal of the court to hold as law fifty-seven propositions submitted by it, and of the action of the court in holding as law eighteen propositions submitted by appellee. Many of the propositions submitted by appellant were abstract propositions of law and were correct but were not applicable to the questions involved here. We have not made a critical examination of all these propositions of law as to the refusal or holding of which error has been assigned, as the judgment of the court below was clearly proper even though there may have been error in the action of the court in passing upon some of the propositions submitted.

For the reasons stated the ordinance in question, as applied to the tracks of appellee from Fifty-second avenue to Austin avenue, in the city of Chicago, is invalid, and the judgment of the municipal court is affirmed.

*Judgment affirmed.*