## CITY OF JAMESTOWN v. PENNSYLVANIA GAS CO. et al. (JEFFERSON et al., Interveners).

(Circuit Court of Appeals, Second Circuit. June 28, 1924.)

## No. 106.

**1. Courts ⊜⇒314—In view of diverse citizenship and amount involved, jurisdiction in federal court.**

Plaintiff and defendants being corporations, and therefore citizens, of different states, and controversy involving more than $3,000, jurisdiction is in the federal court.

**2. Gas ⊜⇒13(3)—City proper party to enforce contract with company to furnish gas.**

A city is the proper party to enforce contract made by it with gas company, whereby the company was bound to furnish gas not only to it but to its inhabitants; it, and not the individual inhabitants, being the real party to the agreement, and the inhabitants merely having the benefit of it while it continues in force.

**3. Courts ⊜⇒266—Act outside territorial jurisdiction enjoinable in action to enforce contract.**

Suit to enforce contract to furnish gas being in personam the court has jurisdiction to enjoin defendants, within its jurisdiction, from cutting off the supply of gas coming from another state, outside the territorial jurisdiction of the court.

**4. Gas ⊜⇒7(1)—Gas company estopped to deny authority of village to grant franchise in streets.**

A gas company, having accepted and acted on franchise from village to lay pipes in its streets, is estopped to deny authority of village to make the grant.

**5. Gas ⊜⇒7(1)—Accepted franchise from municipality irrevocable contract.**

An ordinance granting to a gas company a franchise to lay pipes in streets to supply gas to the municipality and its inhabitants, when accepted and acted on, becomes an irrevocable contract, binding on both parties, in the absence of express reservation of power to terminate it, so that neither can release itself from its obligations thereunder without consent of the other.

**6. Gas ⊜⇒7(1)—Rights under contract of gas company with village not altered by change of village to city.**

Change of village government into city government does not alter the rights of either party under contract arising from gas company accepting and acting on franchise from a village.

**7. Gas. ⊜⇒13(3)—City having contract with company may question validity of discontinuance of service.**

A contractual obligation existing between plaintiff city and defendant gas company when defendant attempted to discontinue its service, plaintiff is entitled to question validity of defendant's action.

**8. Statutes ⊜⇒205—Whole act to be considered in determining meaning of part.**

In interpreting a statute, the whole act must be examined, to arrive at the true intention as to the meaning of any part of it.

**9. Gas ⊜⇒6—Pennsylvania statute held to apply only to enlargement of territory by natural gas company; "altering"; "enlarging."**

Natural Gas Act Pa. May 29, 1885, § 5 (P. L. 29; Pa. St. 1920, § 6115), providing that a company desirous of "enlarging" or "altering" its territory of production or supply for consumption shall file a certificate, and that thereupon its rights, powers, and duties as to the "extension" of its business and lines shall be as if originally provided for in its charter, *held* applicable only to enlargement, and not to surrender or diminution of territory; "altering" being used as synonymous with "enlarging."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alter—Alteration; Enlarge.]

**10. Gas ⊜⇒6—Companies required by Pennsylvania statute to record certificate in state.**

The legislative power of a state not extending beyond its territorial limits, the state and county offices in which Natural Gas Act Pa. May 29, 1885, § 5 (P. L. 29; Pa. St. 1920, § 6115), provides a corporation organized thereunder, and desiring to extend its territory, shall record a certificate, are offices of that state.

**11. Evidence ⊜⇒571(4) — Federal court not bound by state judges' testimony as to what may be done under statute.**

A federal court is not bound to accept the conclusions of inferior court judges of a state, testifying as to what may be done under a statute of that state, but may examine for itself the statute and decisions of the courts of that state.

**12. Gas ⊜⇒6—Pennsylvania statute not intended to give company right to cancel contractual obligations.**

Natural Gas Act Pa. May 29, 1885, § 5 (P. L. 29; Pa. St. 1920, § 6115). *held* not intended to give to a company right to withdraw at its pleasure, from territory which it was already occupying, and put an end to all contractual obligations which it had assumed therein.

**13. Statutes ⊜⇒212—No presumption that unreason or injustice was contemplated.**

Where meaning of a statute is doubtful, courts will not presume that the lawmakers contemplated unreason or injustice.

**14. Gas ⊜⇒6—Pennsylvania statute held not to relieve gas companies of obligations.**

Natural Gas Act Pa. May 29, 1885 (P. L. 29; Pa. St. 1920, § 6107 et seq.), does not, as to corporations formed under it, relieve them from their obligations of service without the necessity of a court decree, finding that such abandonment will not prejudice the public welfare, or the consent of the Public Service Commission, as provided for by other statutes.

**15. Gas ⊜⇒6—Statutory right of company to abandon territory waived.**

Even if Natural Gas Act Pa. May 29, 1885 (P. L. 29; Pa. St. 1920, § 6107 et seq.), conferred right on corporation formed under it to abandon territory at its pleasure, such right could be waived, and was waived by entering into a continuing contract with a city, and accepting a franchise from it, and acquiescing therein for 35 years.

**16. Gas ⊜⇒13(3) — Injunction against discontinuance of service by gas company held too broad.**

The obligation of a gas company under its franchise from a city being to furnish only a "reasonable" supply of gas, depending on its obligations to others, order enjoining it from "cutting off, diminishing, or refusing to carry

on a gas service" should be modified, by inserting the word "unreasonably" after "diminishing."

Appeal from the District Court of the United States for the Western District of New York.

Suit by the City of Jamestown against the Pennsylvania Gas Company and another; J. P. Jefferson and others intervening as defendants. Decree (263 F. 437; 264 F. 1009) for complainant, and defendants and intervening defendants appeal. Modified and affirmed.

The city of Jamestown is a municipal corporation organized under the laws of the state of New York and is within the Western district of that state. It filed its bill of complaint in that district against the Pennsylvania Gas Company and the National Fuel Gas Company. The Pennsylvania Gas Company is a public service corporation organized under the laws of the state of Pennsylvania and having its principal place of business and office at Warren, in that state. It is hereinafter referred to as the Gas Company. And the National Fuel Gas Company, hereinafter called the Fuel Company, is a business corporation organized under the laws of the state of New Jersey. It maintains its executive and principal office in the city of New York, in the state of New York. The Gas Company has maintained for many years a business office at the city of Jamestown where it is carrying on business. In 1885 the then village of Jamestown granted to the Gas Company a franchise granting it the right and privilege to lay and maintain mains and pipes for the distribution and supply of natural gas in, through, and under the streets and alleys of said village. This franchise the Gas Company accepted, and obligated itself to furnish natural or manufactured gas, or both, to the inhabitants of Jamestown at a reasonable rate of return therefor. In 1886 the city of Jamestown by operation of law succeeded to the rights, interests, and obligations of the village of Jamestown, including the contractual obligation of the Gas Company.

Prior to the year 1902 the city of Buffalo, also in the Western district of the state of New York, granted to the Buffalo Natural Gas Fuel Company, a New York corporation hereinafter called Buffalo Fuel Company, having its principal office in that city, a franchise to lay and maintain its mains, pipes, and conduits through the streets of that city, which franchise that company accepted, and obligated itself to supply natural gas to all consumers, who complied with the rules and regulations of the company, at a uniform rate or price per 1,000 cubic feet, except that the company was to furnish natural gas to the city of Buffalo at a cost of 10 per centum less than its schedule rate to private consumers for its public buildings and streets. In pursuance of this franchise agreement the Buffalo Fuel Company furnished natural gas to the inhabitants of Buffalo and to the city of Buffalo until some time in the year 1911. Some time prior to 1902 the Fuel Company above mentioned acquired all of the corporate stock of the Buffalo Fuel Company and continued to hold the same until some time in the year 1911.

In the year last named there was incorporated, also under the laws of the state of New York, a corporation known as the Iroquois Natural Gas Company, hereinafter called the Iroquois Company, with its principal place of business in the city of Buffalo. Soon after the incorporation of this last-named company, all the franchise and properties of the Buffalo Fuel Company were purchased and acquired by the Iroquois Company, which assumed all the obligations of the Buffalo Fuel Company, and it is claimed that the Iroquois Company is now obligated and has agreed to perform all the public service functions contemplated by the franchise granted to the Buffalo Fuel Company, including the obligation to furnish natural gas to the residents and inhabitants of the city of Buffalo requiring the same, and to so furnish it at a reasonable rate of return therefor.

It is also alleged that upon the incorporation of the Iroquois Company all of its capital stock was acquired by and is now owned by the Fuel Company. It is alleged that the Fuel Company, upon its organization in 1902, succeeded to and has at all times since owned and controlled a majority of the capital stock of the Gas Company, and by such majority of the stock controls the choice of officers, the direction of business policies, and the general management of the affairs of the said company; and it is also alleged that the Fuel Company, by its acquisition of the corporate stock of the Iroquois Company, in like manner controls the choice of the latter company's officers, the direction of its policies, and the general management of its affairs.

It is alleged that the Gas Company has an adequate supply of natural gas from fields owned and controlled by it to provide an adequate and ample supply and service

of natural gas to the city of Jamestown and to the residents and inhabitants thereof for many years to come, and that it is holding in reserve and not now operating large and productive gas fields, aggregating in extent many thousands of acres, and totaling more in extent than all the gas fields now operated by it. It is alleged that in addition to the gas fields above mentioned, which the Gas Company owns and controls, there are other extensive and productive gas fields which are contiguous to the gas fields of the Gas Company, which are owned and controlled by various other corporations, all the corporate stock of which the Fuel Company holds and owns, and that of such other gas fields there is now being held in reserve and unoperated many thousands of acres of tested productive gas lands sufficient in extent and productiveness to supply to the city of Jamestown all its gas service for many years to come.

It is also alleged that the city of Jamestown, since the commencement of the natural gas service, has greatly grown, being now a city of approximately 40,000 inhabitants, and that they are largely engaged in manufacturing, and that many of its manufacturing concerns have for many years used and are now using large quantities of the natural gas so supplied by the Gas Company in and about their various businesses, and that many of the residences and business plants have been constructed solely with a view to the use of such gas, and that other means of heating the same cannot be resorted to without great expense in the remodeling and rebuilding such business plants and residences, and that to a large extent the city and its residents have become dependent upon such supply of natural gas furnished by the Gas Company.

It is also alleged that there is no other gas supply, either manufactured or natural, available to the city of Jamestown. Then it is alleged that on August 26, 1919, the Gas Company gave notice to the city clerk of the city of Jamestown of its intention to withdraw from the city and to cease the gas service therein on May 1, 1920. This intention to withdraw and cease its gas service involves, it is alleged, a violation of its contractual obligation arising out of its acceptance of its franchise privileges.

This determination and intention of the Gas Company, it is alleged, is brought about by virtue of the stock ownership and control of a majority of its stock by the Fuel Company, and that at a stockholders' meeting of the Gas Company, and by virtue

of the votes of the stock owned by the Fuel Company a majority of the stockholders of the Gas Company, including the Fuel Company, voted for and authorized such withdrawal of the gas service from the city of Jamestown. It is alleged that the Iroquois Company, so owned and controlled by the Fuel Company, contemplates the continued exercise of its franchise in the city of Buffalo and in other communities within the Western district of New York.

It is alleged that the continuance of the gas service by the Iroquois Company in Buffalo and elsewhere and the discontinuance of the gas service in Jamestown by the Gas Company would be an unlawful and unjust discrimination as between such communities. It is added that, if the Gas Company should withdraw its gas service from Jamestown, as threatened and intended by it, great and irreparable injury would result to that city and to its inhabitants, and that the remedy at law is inadequate.

The bill asks that the Gas Company be perpetually enjoined from cutting off, diminishing, or refusing to carry on a gas service into the city of Jamestown and to the residents of that city; that the Fuel Company be perpetually enjoined by virtue of its control of stock ownership of the Gas Company, or by any other means, from directly or indirectly aiding or abetting in cutting off or interfering with the gas service to the city of Jamestown, its residents and inhabitants by the defendant Gas Company; and that during the pendency of the action, and prior to final judgment, it have by way of temporary restraining order the same injunctive relief prayed for by way of final judgment.

Motions were made to dismiss the bill of complaint on various grounds. It was claimed that the facts stated in the bill did not constitute a valid cause of action in equity against the defendants; also that the facts stated therein were insufficient to show that the court had jurisdiction of the cause of action if one existed; also that two causes of action had been improperly joined; also that there was a misjoinder of parties defendant; also that the bill was defective for nonjoinder of indispensable parties defendant. The court denied the motions to dismiss, granted leave to defendants to answer, and in default thereof that a decree should be entered pro confesso for the relief demanded in the complaint, with costs.

Each of the defendants thereupon interposed separate answers, which contained certain admissions and denials of facts al-

leged in the bill of complaint, and in addition set up 11 separate defenses, which need not now in this connection be particularly stated. Thereafter and on April 2, 1920, the District Court filed an opinion in which, after considering the bill and answers, and the affidavits filed on behalf of the complainant and those filed on behalf of the defendants in opposition thereto, there was granted a temporary injunction the terms of which are as follows:

"It is hereby ordered that the defendant Pennsylvania Gas Company, its officers, agents, employees, and attorneys, and each and every of them, be and the same hereby are enjoined and restrained until the further order, judgment, and decree of this court from cutting off, diminishing, or refusing to carry on a gas service to and into said city of Jamestown, and to the residents and inhabitants of said city, and from directly doing or permitting any act which may or will result in the cessation, diminution, or interference with the natural gas service to and into the city of Jamestown and to the residents and inhabitants of said city; and it is further ordered that the defendant National Fuel Gas Company, its officers, agents, employees, and attorneys, and each and every of them, be and the same hereby are enjoined and restrained until the further order, judgment, and decree of this court from directly or indirectly, by virtue of its control of stock ownership of said defendant, Pennsylvania Gas Company, or by any other means, from aiding or abetting in cutting off, ceasing or interfering with the gas service to and into the said city of Jamestown, its residents and inhabitants."

And on May 29, 1920, the District Judge entered an order in which it directed that the issues of law and fact arising upon the pleadings be referred to a special master in chancery, who was directed to inquire into and investigate the issues, hear the evidence of the parties, and report to the court his conclusions of law and of fact together with the evidence.. At the hearing before him 24 witnesses were called by the complainant and 25 by the defendants. The master seems to have made a full investigation into the facts, and he submitted a long and carefully considered report, which covers 97 printed pages of the record. His conclusion was that the complainant was entitled to a judgment continuing the temporary injunction, which had been heretofore granted, and that the complainant was entitled to recover its costs. The complainant filed exceptions to certain findings of fact and con-

clusions of law. The Gas Company also filed exceptions to certain findings of fact and conclusions of law as did the Fuel Company.

Prior to the reference of the issues of law and fact certain minority stockholders in the Gas Company had petitioned for leave to intervene in the action and file an answer, and their petition was granted and an answer was filed. These interveners also filed exceptions to the master's report. The District Judge overruled all the exceptions which had been taken to the master's report, and his report was in all things ratified and confirmed, and the temporary injunction, which had been granted, was made perpetual. The court added that the decree was not to be construed as requiring the Gas Company "to make additional connections in said city to those now existing."

Robert H. Jackson, of Jamestown, N. Y. (J. E. Mullin, of Kane, Pa., J. H. Alexander, of Warren, Pa., and Benj. S. Dean, of Jamestown, N. Y., of counsel), for appellant Pennsylvania Gas Co.

John E. Mullin, of Kane, Pa., for appellant National Fuel Gas Co.

J. H. Alexander, of Warren, Pa., for intervening appellants.

Louis L. Thrasher, of Jamestown, N. Y., for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This suit was instituted in the United States District Court for the Western District of New York by a municipal corporation existing under the law of the state of New York and which was threatened by a public service corporation, existing under the law of the state of Pennsylvania, with a discontinuance of the supply of natural gas which it was furnishing under an alleged contractual obligation which had not expired.

The reasons assigned by the Gas Company for the proposed discontinuance of the service, briefly stated, were the following:

(1) The gradually diminishing gas supply possessed by the defendant.

(2) The inability of the defendant to render with safety an adequate service.

(3) The right to withdraw from its occupied territory in Jamestown and abandon its service, which right it claims is secured to it by the law of its incorporation.

The question this court must determine is

whether the court below committed error in issuing an injunction restraining the defendant from discontinuing its service in the city of Jamestown.

The complainant is, and has been since the year 1886, a city by virtue of the laws of the state of New York. Laws 1886, c. 84. Prior to that time and for a number of years it had existed as a village. When the city was created, it succeeded to all the rights, interests, and obligations owned and held by it as a village, including all contractual rights and obligations growing out of the franchise grant made by the village to the Pennsylvania Gas Company, the defendant herein, and which will be more fully set forth hereafter in this opinion.

The Gas Company was organized as a corporation under the laws of the State of Pennsylvania, being incorporated therein in the year 1881, and is a citizen of that state. While created a corporation in 1881, it surrendered its charter of that year and on June 15, 1885, received a new charter under the act passed by the General Assembly of the state of · Pennsylvania approved May 29, 1885, and it alleges that it derives all of its corporate powers and duties from that act, and was operating under it at the time the contract with the village of Jamestown was made. The defendant is, under the laws of the state of Pennsylvania, a public service corporation. It owns certain gas fields located in that state, from which it derives a supply of natural gas, and which it transports in pipes and sells to the consuming public.

The Fuel Company, also a defendant herein, was organized as a business corporation in the year 1902 under the laws of the state of New Jersey, and is a citizen of that state. It maintains an office in the city of New York for its principal place of business. The complaint alleges and the answer admits that it owns and controls a majority of the capital stock of the Gas Company, and by virtue of such stock ownership it controls the election of the directors and officers of the Gas Company, the direction of its business policies, and the general management of its affairs.

The complaint charges, and the answer admits, that the Fuel Company acquired and held all the corporate stock of the Buffalo Fuel Company, which furnished natural gas to the city of Buffalo, in the state of New York, and to the residents of that city until the year 1911. The complaint alleges, and the answer of the Fuel Company admits, that in the year 1911 there was

organized the Iroquois Company, a New York corporation, but it denies that soon after the incorporation of the Fuel Company the latter acquired all of the corporate stock of the Iroquois Company. It, however, admitted that it acquired and now holds a large majority of the capital stock of that company.

A petition of intervention was presented to the District Judge, signed by 25 individuals, all of whom were minority stockholders in the Gas Company. All of this number, but one, were citizens of the state of Pennsylvania, and that one was a citizen of California. They asked to be permitted to intervene and to have the case determined upon the rights and obligations of the Gas Company, without reference to the duties or obligations of any other company whatsoever. An interesting allegation, contained in their petition, may be found in the margin.[1]

The court granted permission to intervene in the same manner and with like effect as if the interveners were named in the original bill as party defendants. The injunction was issued against both defendants, the Gas Company and the Fuel Company, and is set forth in the statement of facts which precedes this opinion. The Gas Company, the Fuel Company, and the intervening defendants have all joined in an appeal to this court.

On November 18, 1885, the Gas Company and the village of Jamestown signed a written agreement, which stated that the Gas Company agreed to supply to Jamestown

---

[1] "That the supply of gas which it produces and can produce from its said gas lands and properties, or can acquire by purchase is constantly diminishing, while the demand for it in said Pennsylvania municipalities as well as in the city of Jamestown is constantly increasing, and that it is practically impossible for said Pennsylvania Gas Company to furnish an adequate supply of gas for its consumers within its chartered territory in Pennsylvania; that the maximum amount of gas which said company furnishes at any time is approximately 38,000.000 cubic feet of gas per day; that during periods of extremely cold weather the maximum amount of gas which said company can procure by production, purchase, or otherwise is approximately 28,000,000 or 29,000,000 cubic feet per day, thus leaving a deficiency of approximately 9,000,000 or 10,000,000 cubic feet of gas per day during said periods; that the maximum amount of gas required to furnish said company's consumers in the city of Jamestown and its suburbs in the state of New York is approximately 9,000.000 to 10,000,000 cubic feet of gas per day; that if said Pennsylvania Gas Company discontinues its supply of gas in the city of Jamestown and suburbs in the state of New York, it will then have barely enough gas to adequately supply its consumers within its chartered territory within the state of Pennsylvania."

natural gas for heating and lighting purposes, and that the supply was to continue "so long as said company shall continue to bring natural gas to said village, not exceeding, however, the limit of its corporate existence, as fixed by its certificate of incorporation."

The complainant city has no other supply of natural gas, and no other person, whether individual, partnership, or corporation, has any franchise for the use of the streets and highways of the city for the installation or maintenance of any system for supplying gas either natural or manufactured, and there is in the city no other system for the distribution and sale of gas of any character other than that operated by the Gas Company. The gas so supplied is used for heating as well as for cooking purposes in the dwelling houses; and in the business section many business blocks are constructed with the view of heating solely by gas. In like manner many manufacturing institutions in the city are dependent upon the natural gas supply for power purposes.

The testimony indicates that, if the Gas Company ceases to supply the complainant with natural gas, thereby compelling householders to install a new system of heating and cooking, there will result a loss aggregating nearly $1,500,000. In addition to that there is the expense which would result from changing the system in stores and factories and for lighting the streets and public buildings of the city. What this would be is not disclosed. A manufacturer of small tools, such as wrenches, pliers, and screwdrivers, and employing from 250 to 300 men, and who used natural gas in his factory to operate his engines, however, stated that, if obliged to install a different system, his damage would exceed $100,000. It is sufficiently evident that, if the city of Jamestown is deprived of its supply of natural gas, which it has been receiving for more than 30 years, a great loss would result. It is clear, too, that the amount involved is much greater than is necessary to give the court below jurisdiction in accordance with the requirement of Judicial Code, § 24, as amended (Comp. St. § 991).

The Gas Company's gas fields are located in the state of Pennsylvania. It owns most of these fields in fee. It classifies as operating acreage 60,226.13 acres, and as unoperated acreage 52,796.45 acres. It has in operation approximately 500 wells. In 1915 the company drilled and purchased 30 wells, in 1916 it increased the number of its

wells by 47, in 1917 by 80, in 1918 by 78, and in 1919 by 88. But in 1920 it drilled only 8 wells, which indicates a change in the policy which the company had, up to that time, pursued in the matter of increasing its output of gas.

It appears that in 1917 a corporation known as the Pennsylvania Oil Company, and organized under the laws of the state of Pennsylvania, began the extraction of gasoline from the gas produced by the defendant Gas Company, by what is known as the "absorption process." All of the capital stock of the Pennsylvania Oil Company is, and at all times has been, owned by the defendant Gas Company. But the special master has found as a fact that this extraction of gasoline from the natural gas has no appreciable effect in producing a shortage of gas in Jamestown.

In May, 1917, a complaint was filed with the Public Service Commission, Second District, of the state of New York, against the Gas Company in Jamestown, and complaining that the company had increased its rates for gas in Jamestown, and that the rates were excessive and unjust. The Gas Company filed a demurrer to the complaint, which was overruled, and the company was directed to answer. In its answer it contended that the Public Service Commission was without authority to fix the rates to be charged. This claim rested upon the theory that the transportation, distribution, and sale of gas by the defendant, obtained wholly in the state of Pennsylvania to consumers in the state of New York, was an act of interstate commerce, and so was within the exclusive control and jurisdiction of the federal government. It obtained a writ of prohibition which prohibited the commission from further proceeding with the rate complaint. This writ was later dismissed by the Appellate Division of the Supreme Court of New York, and the order dismissing the writ was carried to the New York Court of Appeals, and was affirmed by that court. Pennsylvania Gas Co. v. Public Service Commission, 184 App. Div. 556, 171 N. Y. S. 1028, affirmed 225 N. Y. 397, 122 N. E. 260. The opinion of the Court of Appeals was written by Judge Cardozo, and was unanimously concurred in by the other members. The subject was reviewed at considerable length. The conclusion reached was that the transportation of natural gas by pipe lines from the state of Pennsylvania into the state of New York is interstate commerce, but that the price at which such gas is sold within the State

of New York is subject to regulation by the Public Service Commission of the state, in the absence of federal regulation. The case then went to the Supreme Court of the United States and was affirmed. Pennsylvania Gas Co. v. Public Service Commission, 252 U. S. 23, 40 S. Ct. 279, 64 L. Ed. 434.

It having been established that the Public Service Commission had jurisdiction of the complaint filed against the Gas Company, the commission proceeded to hear and dispose of the questions involved. The result was the entry of an order on June 28, 1919, which enjoined the Gas Company from requiring the execution and delivery of the application blank to which reference is hereafter more fully made, or any similar blank. It was also enjoined from circulating among its customers by mail, by publication in newspapers, or otherwise, the notice hereinafter referred to, or from conveying in any form of words whatever the threat that defendant's service would be cut off unless the application was signed and delivered by the consumer, or from threatening that its service might be terminated if its proposed agreement should be interfered with by any public authority of the state of New York.

In the year this order was entered the company had threatened to cut off its supply of gas from all consumers in Jamestown who did not sign the application blanks which it sent out, and which specified the rates which the signers bound themselves to pay for gas—the same being in excess of the rates previously paid or authorized. The application blank which the company sent to its customers stated: "Failure to return the application will be regarded as declining our service." It also stated that it was "to become effective only when accepted in writing" by the company at the main office of the company at Warren, Pa. The effect of all such applications accepted in Pennsylvania was to convert the contract into a Pennsylvania contract for service to be rendered in New York; the evident purpose being to prevent, if possible, the matter being within the supervision or control of the Public Service Commission of the state of New York. It further stated that "the gas company by the acceptance hereof shall not be liable for any damages or penalty because of * * * any action by the state of Pennsylvania or its agencies in restricting the exportation of gas from said state. * * * "

It appears that the company inserted advertisements in the papers of Jamestown in which it stated that it proposed to furnish gas only to consumers who made written application upon forms furnished by it. It stated that it proposed to advance rates and adopt a price scale which would reduce the amount of gas used in Jamestown from 20 to 30 per cent.

The board of directors of the Gas Company on August 14, 1919, authorized the officers of that company at their discretion "to surrender up, relinquish, and nullify any and all franchise rights" which the company held in Jamestown, and to discontinue business in the state of New York. Five days later a special meeting of the stockholders was held which ratified this action of the board. At that meeting 176,325¼ shares of stock out of 288,000 were voted, and all were voted for the ratification. On August 26, 1919, the company filed in the office of the city clerk in Jamestown a surrender of all its rights in the highways of the city, and gave notice of its intention to cease service in the city on April 30, 1920. Then on October 18, 1920, it filed in the office of the secretary of the state of New York a certificate dated October 15, 1920, which stated that it revoked and annulled its designation of the person theretofore designated upon whom process against the corporation might be served in the state of New York, and by such certificate stated that it surrendered its authority to do business in the state of New York.

Thereupon in October, 1919, the city of Jamestown commenced the present action to enjoin the company from cutting off, diminishing or refusing to carry on a gas service in Jamestown in violation of its contractual obligations. It may be stated at this point that the special master, to whom this action was referred by the District Judge, has found as a fact that in surrendering its franchise and attempting to cease business in Jamestown the Gas Company, and its officers, stockholders, and directors, have acted in good faith, in the promotion of the best interests of the company.

[1] The plaintiff being a New York corporation, the Gas Company a Pennsylvania corporation, and the National Fuel Company a New Jersey corporation, the controversy is one between citizens of different states, and therefore is one within the jurisdiction of the court, inasmuch as the matter in controversy involves, exclusive of interest and costs, the sum of $3,000.

[2] It cannot be doubted that the complainant is the proper party to enforce a contract made by it for the benefit of its

citizens. The original contract was made by the village of Jamestown with the Gas Company, and under that agreement the latter was bound to furnish gas, not only to the complainant, but to its residents and inhabitants. For breaches of such a contract by a public service corporation it is responsible to the municipality. German Alliance Insurance Co. v. Home Water Supply Co., 226 U. S. 220, 231, 33 S. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000. The municipality is the real party to the agreement. The individual inhabitants are not. They merely have the benefit of it while it continues in force. International Railway Co. v. Rann, 224 N. Y. 83, 120 N. E. 153. Franchises and public contracts made by a municipality for the benefit of its inhabitants are enforceable by the municipality. Smyth v. City of New York, 203 N. Y. 106, 96 N. E. 409; Seaver v. Ransom, 224 N. Y. 233, 120 N. E. 639, 2 A. L. R. 1187; Farnsworth v. Boro Oil & Gas Co., 216 N. Y. 40, 109 N. E. 860.

[3] The res, being in the state of Pennsylvania, where the gas fields lie, was beyond the jurisdiction of the court; but this suit is one in personam, and in such a case it is immaterial that the res is beyond the territorial jurisdiction of the court. We do not agree with the claim of the defendants that the District Court for the Western District of New York was without jurisdiction to enter the decree, in so far as it undertook to control the action of the defendants in the state of Pennsylvania, where the gas fields are located, by enjoining them from cutting off the supply of gas coming from that source into the city of Jamestown. It is undoubted that actions which are local in their character, such as ejectments and trespasses upon real property, are properly referable to the forum rei sitæ. In all such cases, whether the relief sought be at law or in chancery, the suit must be brought where the land lies. Wherever the subject-matter is local, and lies beyond the limit of the district, no jurisdiction attaches to the court sitting therein. But that principle is not infringed by the decree entered in this case.

The present suit is one arising out of contract. In all cases of contract the suit may be brought in the district where the defendant may be found. In Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181, a suit was brought by a citizen of Virginia against a citizen of Kentucky, in the Circuit Court for the District of Kentucky, to compel the defendant to convey 1,000 acres of land in Ohio in accordance with a contractual agreement. Chief Justice Marshall, writing for the court, said: "That in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree." This settled the law for the federal courts, and settled it as it was settled in England in the celebrated case of Penn v. Lord Baltimore, 1 Vesey, Sr., 444. The doctrine of Massie v. Watts has never been overruled by the Supreme Court, and when mentioned is always referred to with respect. Northern Indiana Railroad Co. v. Michigan Central Railroad Co., 15 How. 233, 243, 14 L. Ed. 674; Pennoyer v. Neff, 95 U. S. 714, 723, 24 L. Ed. 565; Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473; Hart v. Sansom, 110 U. S. 151, 155, 3 S. Ct. 586, 28 L. Ed. 101; Cole v. Cunningham, 133 U. S. 107, 119, 120, 10 S. Ct. 269, 33 L. Ed. 538.

The law of the state courts in New York and Pennsylvania is not different. De Coppet v. Cone, 199 N. Y. 56, 92 N. E. 411, 139 Am. St. Rep. 844, 20 Ann. Cas. 841; Jennings Bros. & Co. v. Beale, 158 Pa. 283, 27 A. 948; Clad v. Paist, 181 Pa. 148, 154, 37 A. 194; Schmaltz v. York Mfg. Co., 204 Pa. 1, 53 A. 522, 59 L. R. A. 907, 93 Am. St. Rep. 782. The cases proceed upon the theory that equity acts in personam, and not in rem, and that jurisdiction depends upon the control of the court over the parties by reason of their presence within the court's jurisdiction. In Phelps v. McDonald, 99 U. S. 298, 308 (25 L. Ed. 473), the court said:

"Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitæ, which he could do voluntarily, to give full effect to the decree against him."

The fact that the decree in the present case did not alone require an act to be done within the jurisdiction of the court—the furnishing of gas within the city of Jamestown —but prohibited the doing of any act which would result in the cessation of such service, and that this would embrace the cutting off the supply at the source in the state of Pennsylvania where the gas fields are located, is not material. It has long been settled that a court of equity can restrain a defendant within the jurisdiction from prosecuting suits without the jurisdiction. Such

is the law in England and in the United States. McIntosh v. Ogilvie, 4 Term, 193, note; Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538; Pennoyer v. Neff, 95 U. S. 714, 723, 24 L. Ed. 565; Watkins v. Holman, 16 Pet. 25, 10 L. Ed. 873; Corbett v. Nutt, 10 Wall. 464, 19 L. Ed. 976; Royal League v. Kavanagh, 233 Ill. 175, 84 N. E. 178; Mead v. Meritt, 2 Paige (N. Y.) 402, 404; Erie Ry. Co. v. Ramsey, 45 N. Y. 637; Bates, Federal Eq. Procedure, vol. 1, § 545; Street's Federal Equity Practice, vol. 3, § 2380.

If a court of equity can restrain a party within its jurisdiction from commencing a suit in another state, we know of no reason why it cannot issue an injunction restraining defendants, within its jurisdiction, from going beyond its jurisdiction and into another state to cut off a supply of gas which it is under contract to furnish to a municipal corporation within the jurisdictional limits of the court which issues the injunction.

With these preliminary objections overruled, we come now to a consideration of the real questions at issue. It appears that the Gas Company, defendant herein, was chartered by the state of Pennsylvania in 1881 under the name of the Warren Light & Heat Company. Its incorporation was effected under the General Corporation Act of that state, being the act of 1874 (P. L. 73). This it did by filing a charter with the Governor of that state, which stated that the corporation was formed to supply light and heat by means of natural or manufactured gas to the inhabitants of the borough of Warren and vicinity, in Warren county, in that state. Then in 1885 (P. L. 29; Pa. St. 1920, § 6107 et seq.) the Legislature of the state enacted a general law which provided for the incorporation and regulation of natural gas companies. Thereupon and in the same year the defendant company surrendered its articles of incorporation under the act of 1874, and accepted a charter under the act of 1885. The new articles named certain townships, villages, and boroughs, all in the county of Warren, in Pennsylvania, as the places in which the company intended to supply natural gas, heat, and light. These articles were taken out on June 15, 1885, and at the following December term of the court of common pleas of the county of Warren the name of the defendant was changed by an order of court from the Warren Light & Heat Company to the Pennsylvania Gas Company, and the two corporations were declared "one and the same corporation."

The Natural Gas Act of 1885, under which the defendant took out its articles, as above set forth, provided that "as often as any such corporation shall be desirous of enlarging or altering its territory of production or of supply" it shall deposit in the office of the secretary of state "a certificate setting forth the particulars of such enlargement and alteration, and shall record in the office of the recorder of deeds of the county or counties to which the enlargement or alteration applies, a copy of the certificate, and thereupon * * * the rights, powers and duties of the corporation shall be as to the extension of its business and lines as if the same had been originally provided for and embodied in its charter."

It appears that, after reincorporating under the act of 1885 and its change of name by court decree, the Gas Company extended its operations to Jamestown, in the state of New York, and entered into the contractual relations, hereinafter more fully set forth in this opinion, and that it did this without filing in the office of the secretary of state the certificate stating that it was desirous of "enlarging its territory of production or supply," as provided in the act of 1885, and it claims that in so doing it "transgressed the territorial limitations of its charter." It contends that its charter imposed upon it a duty to render service to consumers within the territory specified in the charter, and that that duty is paramount to any duty that the company can or has assumed to the city of Jamestown and its inhabitants; they being in another state and outside the territory named in the charter. It asserts that in entering Jamestown, in the state of New York, and in making an agreement with that municipality, it "did not assume any express obligations that would impair its ability to at all times discharge its duty under its charter to the commonwealth to which it owed its being."

In this connection it is to be observed that the contract made with the city of Jamestown relates to the sale of natural gas which the company transmitted from its gas fields in Pennsylvania and brought into the state of New York to Jamestown. This transaction involved interstate commerce. It appears, too, that in 1885 the trustees of the then village of Jamestown passed ordinances granting to the New York & Pennsylvania Gas Heating Company, the Jamestown Fuel & Light Company, and the Chau-

tauqua Gas Company the right and privilege to lay and maintain their mains and pipes for the distribution and supply of natural gas in, through, and under the streets and alleys of the village. Thereafter the three companies concerned sold all their rights and property to the Gas Company, one of the defendants herein. Thereupon a resolution was passed by the trustees of the village of Jamestown, which, after reciting the above facts and the fact that the Gas Company desired permission to lay, maintain, use, and repair its mains, pipes, and conduits in, through, and under the streets, lanes, alleys, and public grounds of the village of Jamestown, and after providing that the bonds given to the trustees of the village of Jamestown by the three companies above mentioned should be surrendered for cancellation as soon as the bond of the Gas Company hereinafter mentioned was approved, read as follows:

"Resolved, that the Pennsylvania Gas Company be and it is hereby given and granted the right and privilege to lay, maintain, use, and repair its mains, pipes, and conduits for the distribution and supply of natural and manufactured gas, in, through, and under the streets, lanes, and alleys of the said village of Jamestown, New York. * * * "

The special master found as a fact, and the court below approved the finding, that in the year 1885 the then village of Jamestown granted a certain franchise to the defendant Gas Company, and the Gas Company accepted the grant and exercised its rights and privileges under the said franchise, by the distribution through its pipes and mains, in, along, and through the streets of Jamestown, of its natural gas and the sale of the same to the residents of Jamestown. It was further found as a fact that on November 18, 1885, an agreement was made between the defendant Gas Company and the village of Jamestown, in which it was expressly agreed that the Gas Company, party of the first part, would supply to the village of Jamestown, party of the second part, natural gas for heating and lighting purposes in accordance with certain specifications.

It was provided in the specifications that the supply was to commence as soon as the party of the second part (the village of Jamestown) had sufficiently completed the piping and necessary fitting and had duly requested the party of the first part (the Gas Company) to furnish the same; and it was specified that such supply was to con-

tinue "so long as said company shall continue to bring natural gas to said village, not exceeding, however, the limit of its corporate existence, as fixed by its certificate of incorporation: Provided, however, that if any other company or companies are hereafter granted the right to lay their pipes in the streets of said village for the purpose of supplying fuel gas, the party of the first part shall supply, of the service herein stated, only its proportion, to be determined by dividing such service equally among all such companies." The specifications further provided "that, if for any reason the supply of natural gas of said company shall at any time be insufficient to supply all its customers in said village, the supply to the village shall be cut off before the supply to private consumers, and may be cut off when the supply is sufficient only for private consumers."

It is also found as a fact that, upon the creation of the complainant as a city in the year 1886, the complainant as such city succeeded to all the rights, interests, and obligations owned and held by the complainant as a village, including all contractual rights and obligations growing out of said franchise grant and the acceptance thereof by the defendant gas company, and that the complainant in turn assumed all the obligations owing by it as a village including its obligations to the defendant Gas Company.

[4] It is argued, however, that the village of Jamestown, at the time it granted to the Gas Company the franchise to lay its pipes and mains in the streets, was without authority to make the grant, and that the Gas Company was without the power to accept the grant. The contention is untenable, and the company is estopped from questioning the validity of the grant. A like question was raised in Farnsworth v. Boro Oil & Gas Co., 216 N. Y. 40, 109 N. E. 860. In that case a town board of a township granted to a gas company a franchise to occupy the streets with its pipes and mains. The company accepted the grant, laid its pipes and mains in the streets, and distributed its gas to the inhabitants of the town. After so occupying the streets for several years, it applied to the town board for permission to charge its consumers an increased rate above that fixed in the original grant. The increase was refused. The company then denied the validity of the original grant, and asserted that the town board, when it made the grant, was without authority, and that under the laws of the state of New York the consent to the use of

the streets should have been obtained from the commissioner of highways. The court, in an opinion written by Judge Cardozo, held that the defendant was estopped from denying the binding force of its agreement. In the course of his opinion he said:

"It [the company] received the very benefit which it sought, the opportunity to lay its mains without molestation of its possession or question of its right. It did not intend to occupy the streets as a trespasser. It intended to occupy them under color of the right which the consent of the board conferred. Under color of that right it went into possession, and it has retained that possession, undisturbed and unchallenged, for nearly fourteen years. * * * In such circumstances, the defendant will not be heard to say, while retaining possession of the highway, that the consent under which it entered was valueless and void. Its position is the same as that of a lessee who has gone into possession in submission to the title of the lessor. It is the same as that of a licensee who has acquired the right to manufacture under an outstanding, though defective, patent. The lessee will not be heard to say that the lessor had no title to convey, * * * and this though the lease was not merely voidable, but void upon its face."

[5, 6] An ordinance granting to a public service corporation the right and privilege to lay and maintain mains and pipes in, through, and under the streets and alleys of a municipal corporation for the distribution and supply of gas to the municipality and to its residents and inhabitants, when accepted and acted upon by the corporation to which the grant is made becomes an irrevocable contract binding upon both the municipality and upon the public service corporation in the absence of an express reservation of the power to terminate it. The New York Court of Appeals holds that such a grant confers a franchise, that such a franchise is property of which the company cannot be divested except for cause and by due legal process. In People ex rel. Woodhaven Gas Co. v. Deehan, 153 N. Y. 528, 532, 47 N. E. 787, 788, the court declared that "such a franchise is property that cannot be destroyed or taken from it or rendered useless by the arbitrary act of the village authorities in refusing the permit to place the conductors under the streets." It added "that the change from town to village government did not change the rights of the relator, since it could not be divested of the franchise or of its prop-

erty except for cause and by due legal process." See, also, State v. Excelsior Coke Co., 69 Kan. 45.[1] We may add that a change of village government into a city government for the same reasons would not alter the rights of either party to the agreement; and if the municipality, having made such a grant without reservations, cannot impair the rights granted, so for like reasons the public service corporation, having accepted the grant, cannot, without the consent of the municipality, release itself from the obligations which it assumed in its acceptance of the grant.

It is established and well-settled law that, where there are no controlling provisions in state Constitutions or statutes, and no prior adjudication to the contrary by the courts of the state in which the question arises, the grant of a franchise like the one under consideration is a contract, which neither party has a right to annul without the consent of the other. Northern Ohio Traction & Light Co. v. Ohio, 245 U. S. 574, 585, 38 S. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 117, 33 S. Ct. 967, 57 L. Ed. 1410; Owensboro v. Cumberland Telephone Co., 230 U. S. 58, 73, 33 S. Ct. 988, 57 L. Ed. 1389; Grand Trunk Western Ry. Co. v. South Bend, 227 U. S. 544, 556, 33 S. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; Louisville v. Cumberland Telephone Co., 224 U. S. 649, 664, 32 S. Ct. 572, 56 L. Ed. 934.

And it is certainly the law of the federal courts that, where a municipal ordinance grants to a public service corporation the right to occupy or make use of its streets with its mains and pipes for furnishing gas to the inhabitants, but is silent as to the period of time during which such use of the streets is to continue, there being nothing in the Constitution or statutes of the state limiting the period of such grants, the contract is not one at will, which is revocable at the pleasure of either party. Northern Ohio Traction Co. v. Ohio, 245 U. S. 574, 585, 38 S. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865; New York Electric Lines Co. v. Empire Subway Co., 235 U. S. 179, 35 S. Ct. 72, 59 L. Ed. 184, L. R. A. 1918E, 874, Ann. Cas. 1915A, 906; Louisville v. Cumberland Telephone Co., 224 U. S. 649, 664, 32 S. Ct. 572, 56 L. Ed. 934; Old Colony Trust Co. v. Omaha, 230 U. S. 100, 117, 33 S. Ct. 967, 57 L. Ed. 1410; Owensboro v. Cumberland Telephone Co., 230 U. S. 58, 73, 33 S. Ct. 988, 57 L. Ed. 1389; Grand Trunk Western Ry. Co. v. South Bend, supra. This doctrine is based upon the theory

[1] 76 P. 447.

that it is against common experience to conclude that rational and intelligent men would willingly invest large sums of money in constructing an expensive and extensive plant, which should be subject to destruction at any time by a mere withdrawal by the municipal authorities of the permission granted. It is also against common sense to suppose that the inhabitants of the municipality, in the erection of their houses, places of business, and factories, would incur heavy expense in equipping them for the use of gas or water, unless it was understood that the contractual obligation between the municipality and the public service corporation was not a mere agreement at will which either party could terminate at any time and for any reason. See, also, Ghee v. Northern Union Gas Co., 158 N. Y. 510, 53 N. E. 692; People v. O'Brien, 111 N. Y. 39, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; Davis v. Mayor, etc., of City of New York, 14 N. Y. 506, 67 Am. Dec. 186. And this seems to be the general rule. See Attorney General v. Haverhill Gaslight Co., 215 Mass. 394, 101 N. E. 1061, Ann. Cas. 1914C, 1266; Peoria Railroad Co. v. Peoria R. T. Co., 252 Ill. 73, 96 N. E. 689; Chicago v. Chicago Elevated Railroad Co., 250 Ill. 486, 95 N. E. 456; Asbury Park, etc., Co. v. Neptune, 73 N. J. Eq. 323, 67 A. 790, affirmed 75 N. J. Eq. 562, 74 A. 998; Duluth v. Duluth Telegraph Co., 84 Minn. 486, 87 N. W. 1127; In re Johnston, 137 Cal. 115, 69 P. 973; Humphreys v. Central Kentucky Natural Gas Co., 190 Ky. 733, 229 S. W. 117, 21 A. L. R. 664; Indianapolis v. Consumers' Gas Trust Co., 140 Ind. 114, 39 N. E. 433, 27 L. R. A. 514, 49 Am. St. Rep. 183; State ex rel. National Subway Co. v. St. Louis, 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113. It is true, however, that in Ohio the courts have laid down a different doctrine. Newcomerstown v. Consolidated Gas Co., 100 Ohio St. 494, 127 N. E. 414; East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 90 N. E. 40, 26 L. R. A. (N. S.) 92, 18 Ann. Cas. 332.

[7] The defendant the Gas Company claims that it has under its charter a right at any time to discontinue at will its service at any place, and therefore has a right to discontinue furnishing natural gas to the city of Jamestown. It relies upon the act passed by the General Assembly of the state of Pennsylvania, approved May 29, 1885, under which act it claims to derive as above stated all its right, powers, and privileges. Section 5 of the act provides as follows:

"When and as often as any such corporation shall be desirous of enlarging or altering its territory of production or of supply, for consumption, both or either of them, and its pipe line or lines and branches, it shall, thereupon, make, under its common seal and deposit in the office of the secretary of the commonwealth, a certificate setting forth the particulars of such enlargement and alteration, and shall record in the office of the recorder of deeds of the county or counties to which the enlargement or alteration applies, a copy of the certificate, and thereupon and thereafter the rights, powers and duties of the corporation shall be as to the extension of its business and lines as if the same had been originally provided for and embodied in its charter."

It asserts that in deciding to discontinue its service to the city of Jamestown it has proceeded substantially in accordance with the provisions of the section as above set forth, which it declares is conclusive in this suit as to its rights. The statute thus relied upon was construed by the Supreme Court of Pennsylvania in Germania Refining Co. v. Alum Rock Gas Co., 226 Pa. 433, 75 A. 715. It is said that the court held in that case that the gas company, which had altered its lines and taken up its pipes and discontinued furnishing gas to the Germania Refining Company, had the right under the statute to abandon and discontinue the service. But what was actually decided in that case, according to the headnote, which appears to correctly state it, was as follows: Where a natural gas company under the Act of May 29, 1885, through its directors, surrenders its franchise over a portion of the territory occupied by it, without objection by stockholders, creditors, or the state, landowners within the territory surrendered, and previously served by the company, have no standing to question the action of the company. In that case the court held that the plaintiffs had no standing in court which justified them in raising the question as to the obligation to continue supplying natural gas to them as the original contract between the plaintiffs and the defendant had expired, and that the proof was not sufficient to warrant a finding that there had been a renewal of the contract. That case differs from the one now before the court, in that in this suit it appears that the contract between the city of Jamestown and the Gas Company had not expired at the time the latter gave notice of its intention to

discontinue its supply of gas to the complainant. As a contractual obligation existed between the plaintiff and the defendant in this suit at the time the defendant attempted to terminate its service, the plaintiff is entitled to question the validity of the defendant's action. In the Germania Case no franchise rights and no contractual relationship were involved, while in this case they are in issue. And the Pennsylvania statute cannot control a relationship created and existing within the state of New York.

[8-11] Section 5 of the act of 1885 provides that "when and as often as any such corporation shall be desirous of enlarging or altering its territory of production or of supply for consumption," it shall file and deposit a certificate setting forth the particulars of such enlargement and alteration. It is to be observed that the language used is "enlarging or altering," and not "enlarging or diminishing." In interpreting a statute, the whole act must be examined to arrive at the true intention as to the meaning of any part of it. Co. Litt. 281a. And a careful reading of the act of 1885 convinces us that the word "altering" was intended to apply to the enlargement of territory, and not to the surrender or diminution of territory. In other words, "enlarging" and "altering" are used as synonymous. The reasons for so thinking will appear as we proceed. This certificate is to be filed in the office of the secretary of the commonwealth, and a copy of it must be recorded in the office of the recorder of deeds of the county or counties to which "the enlargement or alteration applies." In passing it may be said that "the secretary of the commonwealth," in whose office the certificate is to be filed, is the secretary of the commonwealth of Pennsylvania, and the recorder of deeds of the county or counties relates to a county or counties in Pennsylvania. The Legislature of that state cannot direct what shall be recorded in the office of the secretary of state in New York, or in the office of the recorder of deeds in the counties of the state of New York. Such legislative power as the state of Pennsylvania possesses, of course, does not extend beyond its territorial limits. Then the Pennsylvania act provides that, the certificate having been recorded as directed, thereafter "the rights, powers and duties of the corporation shall be, as to the *extension* of its business and lines, as if the same had been originally provided for and embodied in its charter." This is applicable and refers only to extensions. It is inapplicable to an alteration,

which involves a surrender of territory or lines. Germania Refining Co. v. Alum Rock Gas Co., 226 Pa. 433, 435, 75 A. 715. As there is no reference in the act concerning the effect of the certificate upon the rights, powers and duties of the corporation or its business and lines in surrendered territory, we fail to see that the act is applicable to the facts involved in the present suit.

We do not overlook the testimony given by two or three judges of the inferior courts of Pennsylvania as to section 5 of the act of 1885, and who say that a corporation organized and doing business under that act have the right to abandon the business of supplying gas in part of its territory by taking the procedure prescribed in that section. They expressed no opinion upon the right of a Pennsylvania corporation to abandon its operations in territory outside of the state of Pennsylvania and were not examined upon that question. The opinions they did give were based upon two cases: Germania Refining Co. v. Alum Rock Gas Co., supra, and New York & Pennsylvania R. Co. v. Public Service Commission, 72 Pa. Super. Ct. 523, and the act of 1885. The opinions of these witnesses are entitled to great respect, and especially as to the right of a Pennsylvania corporation to abandon operations within that state. But this court is not bound to accept their conclusions, and is at liberty to examine for itself the Pennsylvania statute and the decisions of the courts of that state. There seems to be no decision in that state upon the exact question here involved, and if such a decision had been rendered this court does not think it would be controlling.

[12, 13] But, while we take the view above expressed, we do not think it is necessary to base our decision upon it alone. As we understand the act of 1885, it is not entitled to the broad construction which the defendant seeks to place upon it. All that the act intended, as it appears to us, was to grant to companies incorporated under it the right to alter its territory of production or supply by enlarging the field of its operation without a further application to the state of Pennsylvania for an amendment of its charter. We think that appears from the statement at the end of the section which as we have pointed out expressly declares the effect of the alteration of territory which the act authorized referring to it as "the extension of its business and lines." It makes no reference to the effect upon the obligations which the company had assumed in the territory within which

it was already operating. If it was intended that the company should have the right to withdraw from such territory at its pleasure, and put an end to all contractual obligations which it had assumed therein, that intent should have been clearly expressed and not left to implication. The act says not one word as to the abandonment or surrender of territory already occupied by the company, or as to the termination of its contracts with consumers of its gas. If the construction which the company seeks to place upon the act is correct this extraordinary situation would result. The company could one day file an abandonment of its occupied territory, and thereby end all its contracts therein, and, having thus at will terminated all contracts, it could the next day file another certificate including the same territory and carry on its operations therein as before with any one willing to make a new contract with it. It seems incredible that such was the intent of the act. If that was its intent, the act does not, in our opinion, reveal it. Where the meaning of a statute is doubtful, courts will not presume that the lawmakers contemplated unreason or injustice. Chew Heong v. United States, 112 U. S. 536, 555, 5 S. Ct. 255, 28 L. Ed. 770.

[14] Moreover, it appears that the Pennsylvania Act of April 9, 1856, provides that any corporation, by and with the consent of a majority meeting of the corporators duly convened, may petition any court of common pleas of the proper county "for permission to surrender any power contained in its charter, or for the dissolution of such corporation," and that the court, if "satisfied that the prayer of such petition may be granted without prejudice to the public welfare, or the interests of the corporators, * * * may enter a decree in accordance with the prayer of the petition." Laws Pa., 1856, p. 293 (Pa. St. 1920, § 5791). And the Pennsylvania Public Service Company Law gives to the Public Service Commission of that state authority to direct any public service company to continue rendering its public service until such time as it has applied to and obtained from the commission permission to abandon such service. A public service corporation desiring to discontinue its business must obtain the consent of the Public Service Commission. New Brighton Borough v. New Brighton Water Co., 247 Pa. 232, 93 A. 327; York Water Co. v. York, 250 Pa. 115, 95 A. 396; Leiper v. Baltimore & Ohio Railroad Co., 262 Pa. 328, 105 A. 551.

To give the act of 1885 the construction contended for by the defendants in the instant case is to assume that the Legislature of Pennsylvania intended, as respects the corporations formed thereunder, to change the policy of the state and allow such corporations to be relieved from their obligations of service without the necessity of either a court decree finding that such abandonment would not prejudice the public welfare or without the consent of the Public Service Commission. We cannot read into the act of 1885 any such intention, and in the absence of any authoritative decision of the courts of Pennsylvania, declaring that such was the intention, we shall not so interpret the statute. Such an interpretation is not to be inferred from the use of a single ambiguous word quite capable of another meaning.

[15] And finally, if it be assumed that the act of 1885 was intended to confer a right upon corporations formed under it to abandon territory within which it was entitled under its charter to operate, the right to make such a surrender of territory is a right which the company can waive. Assuming, for the purposes of argument, that the right to abandon territory was conferred, it must be conceded that the right was a mere privilege granted to the company for its own benefit, and not for the benefit of the state, and as such it was capable of being waived. There can be no doubt that a corporation like a person may waive "a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and having once done so he cannot subsequently invoke its protection." Sentenis v. Ladew, 140 N. Y. 463, 466, 35 N. E. 650, 37 Am. St. Rep. 569; Mayor, etc., of New York v. Manhattan Railway Co., 143 N. Y. 1, 37 N. E. 494; Musco v. United States Surety Co., 196 N. Y. 459, 90 N. E. 171, 134 Am. St. Rep. 851. And see Cooley's Const. Lim. (7th Ed.) 250, where it is asserted that a party may by his prior action preclude himself from asserting a constitutional right. And it seems to us that the Gas Company, after it entered Jamestown and entered into the continuing contract it made with that municipality, accepting a franchise from it and acquiescing therein for 35 years, cannot now assert that it has a right at its pleasure to surrender and abandon the territory into which it had entered and respecting which it had assumed contractual obligations.

The special master, in a report submitted to the District Judge, which the latter confirmed, as we think properly, stated his conclusion as follows:

"The defendants must continue to supply gas to Jamestown, a reasonable supply, taking into consideration the contractual and corporate obligations to others, under reasonable regulations as fixed from time to time by agreement, or by the proper tribunal, and until lawfully released by a judgment or order, after satisfactory proof of sufficient cause for discontinuing, which does not, at this time, appear from the evidence in this proceeding."

In other words, his conclusion was that at the present time no satisfactory proof of sufficient cause had been shown by the Gas Company for discontinuing its supply of gas to Jamestown, and that the company should be required to continue to render its service to that city until lawfully released by a judgment or order. In his opinion the supply to be furnished was to be "a reasonable supply, taking into consideration the contractual and corporate obligations to others" by which the company was bound.

[16] The District Court, while concurring in and approving the master's findings of law and fact, made the preliminary injunction final, and restrained the Gas Company until the further order, judgment, and decree of the court from "cutting off, diminishing or refusing to carry on a gas service to and into said city of Jamestown, and to the residents and inhabitants of said city, and from directly doing or permitting any act which may or will result in the cessation, diminution, or interference with the natural gas service to and into the city of Jamestown and to the residents and inhabitants of said city."

Under the injunction order as issued the Gas Company not only cannot discontinue its service, but it cannot diminish it in amount without obtaining the court's permission. Any diminution in amount of the supply furnished would involve a violation of the order. As the obligation of the Gas Company is to furnish only a "reasonable" supply, and as what constitutes a reasonable supply depends upon a consideration of all the company's contractual and corporate obligations to others, the language of the order seems to us too broad in its scope, and to be in need of modification. The court is accordingly directed to modify its order as respects the Gas Company so that it shall read as follows:

"It is hereby ordered that the defendant Pennsylvania Gas Company, its officers, agents, employees, and attorneys, and each and every of them, be and the same hereby are enjoined and restrained until the further order, judgment, and decree of this court from cutting off, diminishing unreasonably, or refusing to carry on a gas service to and into said city of Jamestown and to the residents and inhabitants of said city, and from directly doing or permitting any act which may or will result in the cessation, diminution, or interference with the natural gas service to and into the city of Jamestown and to the residents and inhabitants of said city, and"—

The remaining portion of the restraining order, and which relates to the Fuel Company, needs no modification.

The order as above modified is affirmed.